601 F.2d 1242
 Dewitt OWENS, Plaintiff-Appellant,
v.
John HAAS, Alonzo Quarles, Peter Skalkos, James J. Britt,
William R. Kessler, Joseph Chatowski, Michael
Allen, Walter J. Flood, Defendants,
and
The County of Nassau, Defendant-Appellee.
 No. 825, Docket 79-7043.
 United States Court of Appeals,
Second Circuit.
 Argued April 16, 1979.
Decided July 9, 1979.
 
 Steven E. Harbour, Philip K. Howard, New York City, of counsel, for plaintiff-appellant.
 Abraham S. Altheim, New York City, Newman & Schlau, P. C., New York City, for defendant-appellee.
 Before KAUFMAN, Chief Judge, SMITH, Circuit Judge, and MacMAHON, District Judge.*
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 This appeal from the dismissal of a civil action against the County of Nassau, one of several defendants, comes to us following a direction for judgment under Fed.R.Civ.P. 54(b). Plaintiff Owens sued corrections officers and the county for violation of his civil rights under 42 U.S.C. §§ 1983 and 1985, and for breach of contract as a third party beneficiary. Judge Pratt found that Owens had failed to state a claim against the county under Fed.R.Civ.P. 12(c), and dismissed the action. 456 F.Supp. 1009 (E.D.N.Y.1978). We reverse and remand for further proceedings.
 
 
 2
 Plaintiff Owens was a federal prisoner who was cooperating with the United States Government. In order to insure his safety, he was transferred from federal prison to the Nassau County Jail in Hicksville, New York in August, 1976. This transfer was pursuant to a contract between the U.S. Bureau of Prisons and Nassau County, authorized by 18 U.S.C. § 4002.[1]
 
 
 3
 The incident at issue took place on October 27, 1976. According to plaintiff, he was asleep in his cell when he was visited by a guard and told to report to the court desk downstairs to acknowledge the lodging of a warrant against him. Plaintiff Owens refused to leave his cell to sign for the warrant, protesting that "There shouldn't be another warrant out for me. I already signed for a warrant. . . ." Owens apparently believed that there was no requirement that he sign if he did not wish to do so.
 
 
 4
 Owens related that the first guard left, and sometime thereafter, First Class Corrections Officer Haas came to his cell. When Owens against refused to leave his cell, the two men argued, and Haas told Owens to "pack (his) stuff up," indicating that Owens would be taken to a more secure locked cell on a different floor. Insults were exchanged when Owens refused to leave; then Officer Haas left.
 
 
 5
 Fifteen or twenty minutes later, several officers returned to Owens' cell and ordered him to leave. An argument ensued, and Owens stepped out of his cell. Approximately seven guards were present. Owens was grabbed and beaten severely by the prison officials, resulting in lacerations, bruises, and lasting impairments which cause him to suffer blackouts to the present time.
 
 
 6
 Owens appeared before U.S. District Judge John R. Bartels of the Eastern District of New York for sentencing in an unrelated case shortly after the incident. Judge Bartels noticed that Owens was badly injured, and questioned him about the injuries. Judge Bartels then ordered a hearing on the circumstances of the incident resulting in the injuries, at which Owens and several of the prison officials testified.
 
 
 7
 Owens filed this damage suit in April, 1977, alleging violations of his constitutional rights under 42 U.S.C. § 1983 and § 1985 and claiming damages for breach of contract as a third party beneficiary of the contract between the Bureau of Prisons and Nassau County, under 18 U.S.C. § 4002 and general contract principles. Judge Pratt rejected the § 1983 claim against the county because no official policy or pattern of constitutional violations had been pleaded so as to hold the county liable under the court's reading of Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Judge Pratt also found that Owens could not claim he was a third party beneficiary of the contract, and no private right of action existed under 18 U.S.C. § 4002. Consequently, the court dismissed the action against the county. We reverse and remand.
 
 Section 1983 Claim
 
 8
 When Owens filed his complaint in 1977, municipalities could not be held liable for constitutional violations, under the immunity established as to such bodies in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). This general immunity was removed from local bodies when the Supreme Court in Monell overruled Monroe v. Pape and held that municipalities are "persons" within the meaning of 42 U.S.C. § 1983.[2]
 
 
 9
 The Court in Monell left open the exact dimensions of the grounds on which a municipality could be held liable. It is clear that
 
 
 10
 a municipality cannot be held liable Solely because it employs a tortfeasor or, in other words, a municipality cannot be held liable under § 1983 on a Respondeat superior theory. (Monell, supra 436 U.S. at 691, 98 S.Ct. at 2036.)
 
 
 11
 Therefore, municipalities could only be liable for "action pursuant to official municipal policy of some nature (that) caused a constitutional tort." Id., at 691, 98 S.Ct. at 2036.
 
 
 12
 The trial court read this language as requiring that a violent incident such as the one here be part of an official policy or custom, or be one in a series of incidents of which the county is aware, for the county to be held liable for the beating of this federal prisoner. Since no such causal link was pleaded, the district court concluded that there was no basis for county liability. We believe that this reading of Monell was too narrow, and that plaintiff Owens should have been given the opportunity, after limited discovery, to amend his complaint to state a ground for holding the county liable here.
 
 
 13
 The district court was correct in noting that a mere failure by the county to supervise its employees would not be sufficient to hold it liable under § 1983. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). However, the county could be held liable if the failure to supervise or the lack of a proper training program was so severe as to reach the level of "gross negligence" or "deliberate indifference" to the deprivation of the plaintiff's constitutional rights. Leite v. City of Providence, 463 F.Supp. 585, 590-91 (D.R.I.1978); See also Hampton v. Holmesburg Prison Officials,546 F.2d 1077, 1081-82 (3d Cir. 1976). This concept of "deliberate indifference" does not hold the county at fault for the actions of its employees on a Respondeat superior basis; it holds the county liable for its Own actions which result in deprivation of constitutional rights. See Turpin v. Mailet, 579 F.2d 152, 164-65 & n. 37 (2d Cir. 1978), Vacated, 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645, Modified, 591 F.2d 426 (2d Cir. 1979); DiMarzo v. Cahill, 575 F.2d 15, 18 (1st Cir. 1978), Cert. denied, 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978).
 
 
 14
 There is some indication in this case that a claim by Owens of failure to train or deliberate indifference of the county to violations of constitutional rights could be raised. In testimony before Judge Bartels, Officer Haas mentioned that one of the other guards involved in the incident, Officer Allen, was "fairly new" on the job. Haas also noted his philosophy that "a show of force" involving the presence of several officers is a good way to control an inmate who refused to obey an order. That an officer who is new to his job might not be properly prepared, and that a "show of force" might get out of hand in the absence of proper training, could be inferred from this testimony. The brutal and premeditated nature of the beating in this case and the number and rank of officers involved warrant the allowance of limited discovery so that the plaintiff may attempt to substantiate a claim of "deliberate indifference" by the county to the violence of prison officials, stemming from a failure to train the guards in an adequate manner.
 
 
 15
 The district court rejected liability for the county, in part, because plaintiff "asserts here not a repeated course of conduct, but only an isolated incident." Owens v. Haas, 456 F.Supp. 1009, 1012 (E.D.N.Y.1978). While some causal link must be made between the county's failure to train and the violation of constitutional rights, a single brutal incident such as this may be sufficient to suggest that link. As noted in Leite, supra, 463 F.Supp. at 590-91:
 
 
 16
 Although a city cannot be held liable for simple negligent training of its police force, the city's citizens do not have to endure a "pattern" of past police misconduct before they can sue the city under section 1983. . . . (A) municipality is fairly considered to have actual or imputed knowledge of the almost inevitable consequences that arise from the nonexistent or grossly inadequate training and supervising of a police force.
 
 
 17
 It is true that the failure to train or supervise law enforcement officers must be so grossly negligent as to constitute "deliberate indifference" in order to hold the county liable. As mentioned, though, the circumstances of this severe beating are such as to suggest official acquiescence on some level. In this case, then, Owens should be permitted to conduct limited discovery in order to determine if a case can be made for deliberate indifference by the county. Allowance of limited discovery and amendment of the complaint in this case is an appropriate way to balance the concern against entertaining groundless suits against municipalities, See Smith v. Ambrogio, 456 F.Supp. 1130 (D.Conn.1978), with the dictates of Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (2d Cir.), Cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970):
 
 
 18
 An action, especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims. (Citations omitted.)
 
 Section 1985 Claim
 
 19
 Since under Monell, a local body is a "person" for the purposes of § 1983, we assume that the same definition of "person" would apply to § 1985, which allows damages whenever two or more "persons" conspire to violate the civil rights of another. Again the county could not be held liable on a Respondeat superior theory. However, if Owens' amended complaint alleges an official custom or policy of the county, relating to failure to train or to other matters stemming from or resulting in a conspiracy implicating the county itself, a § 1985 claim will lie. See Heimbach v. Village of Lyons, 597 F.2d 344 (2d Cir. 1979).
 
 Breach of Contract Claims
 
 20
 Plaintiff Owens claims he was a beneficiary of the contract between the U.S. Bureau of Prisons and the County of Nassau, which called for Nassau County to house and care for federal prisoners in its jail, entered into pursuant to 18 U.S.C. § 4002.
 
 
 21
 Owens argues first that he has an implied private right of action under 18 U.S.C. § 4002. This statute authorizes the United States to contract with local authorities "for the imprisonment, subsistence, care, and proper employment" of federal prisoners. Owens contends that since the statute lists its purpose as "providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress," he is intended to be benefited by the statute, and thus may sue for injury to him under its implied authority.
 
 
 22
 We agree with the court below that an implied private right of action under § 4002 will not lie. In order to imply a private right of action under a statute which does not explicitly provide for such, certain standards must be met. See generally, Davis v. Passman, --- U.S. ----, ----, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). According to Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), the court must look to (a) whether plaintiff is "one of the class for whose especial benefit the statute was enacted," (b) whether the legislative history shows any intent to deny or to grant a private remedy, (c) whether implying a private remedy would be consistent with the underlying legislative scheme and (d) whether the cause of action is one traditionally relegated to state law. In this case, these standards have not been met.
 
 
 23
 While prisoners themselves benefit from the scheme of the federal statutes dealing with prisons, there is insufficient support for a finding that the Statutes were enacted Especially for the benefit of prisoners. The underlying legislative scheme is aimed at providing suitable quarters for prisoners, but also at creating a workable administrative network for the operation of federal prisons. The Attorney General is given ultimate control over the prisons in 18 U.S.C. § 4001, and the language and history of § 4002 show no specific intention to grant a private right of action to prisoners. Thus, we cannot find an implied right of action under 18 U.S.C. § 4002 which could be utilized by Owens. See Hampton v. Holmesburg Prison Officials, supra, 546 F.2d at 1082; Williams v. United States, 405 F.2d 951, 954 (9th Cir. 1969); Johnson v. Lark, 365 F.Supp. 289, 301 (E.D.Mo.1973).
 
 
 24
 Next, Owens claims a right to collect damages for breach of contract as a third party beneficiary of the contract between the United States and Nassau County, not specifically through an implied right of action under § 4002, but under general principles of contract law as they relate to this particular contract. In order to determine the validity of this claim, Judge Pratt issued an order requiring the parties to submit a copy of the contract at issue. Upon examination, Judge Pratt found no basis for holding that Owens enjoyed status as a third party beneficiary, and rejected his claim on this ground. Our reading of the contract[3] suggests that Owens might be able to enforce the contract as a third party beneficiary, and we remand for further consideration of this claim.
 
 
 25
 The first question is whether these claims are a matter of federal law or of state law. The question is posed both as a guide to contract interpretation and as an alternate basis for jurisdiction in the district court. If federal law applies to the contract claim, then Owens will have a jurisdictional basis for bringing such a claim in federal district court under28 U.S.C. § 1331, even if his § 1983 claim, discussed above, fails. If, however, the issues are ones purely of state law, there would be no basis for jurisdiction in the federal courts, absent a valid federal claim. See Hampton v. Holmesburg Prison Officials, supra, 546 F.2d at 1082. While the matter is not free from doubt, it may be that the contract here sufficiently implicates federal interests so that interpretation of rights and duties under the agreement should be governed by federal law. See Bank of America National Trust and Savings Association v. Parnell, 352 U.S. 29, 34, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956); Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); Ivy Broadcasting Co. v. American Telephone & Telegraph Co., 391 F.2d 486, 491-93 (2d Cir. 1968). See also, Illinois v. City of Milwaukee, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).
 
 
 26
 Though state law will be applied to an agreement which involves private parties and does not bring into play rights or duties of the federal government, Miree v. DeKalb County, 433 U.S. 25, 28-29, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); Parnell, supra, 352 U.S. at 33, 77 S.Ct. 119 "federal common law" will be applied by a court when there is some overriding federal interest at stake. This interest could be implicated when litigation is such that "substantial rights and duties of the United States hinge on its outcome," Miree, supra, 433 U.S. at 31, 97 S.Ct. at 2495, when the scale of the federal activities in an area is so vast that "(t)he desirability of a uniform rule is plain," Clearfield Trust, supra, 318 U.S. at 367, 63 S.Ct. at 575, or if "the congressional purpose (of a statutory scheme) can be achieved only if a uniform federal law governs," Ivy Broadcasting Co., supra, 391 F.2d at 491. We recognize that the question of whether federal common law or state law applies to agreements involving obligations of the federal government is often a close one. See Miree, supra (Burger, C. J., concurring). Still, in this case there is a sufficient governmental interest in the treatment of federal prisoners to make it desirable that interpretations of rights under federal contracts relating to that area be governed by federal law.
 
 
 27
 To begin with, the federal government owes a duty of reasonable care to safeguard the security of prisoners under its control.[4] See United States v. Muniz, 374 U.S. 150, 164-65, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); Jones v. United States, 534 F.2d 53, 54 (5th Cir.), Cert. denied, 429 U.S. 978, 97 S.Ct. 487, 50 L.Ed.2d 586 (1976); Cohen v. United States, 252 F.Supp. 679, 687 (N.D.Ga.1966), Rev'd in part on other grounds,389 F.2d 689 (5th Cir. 1967). This duty stems from both the statutory scheme, specifically 18 U.S.C. § 4042,[5] and from general duties imposed by the Constitution. See generally, Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Burgin v. Henderson, 536 F.2d 501, 502 (2d Cir. 1976). See also, Hernandez v. Lattimore, --- F.2d ---- (2d Cir., June 7, 1979).
 
 
 28
 In addition, the scheme of regulation of federal prisons indicates a congressional intent to provide some general protections for federal prisoners. 18 U.S.C. § 4001 gives the Attorney General supervisory authority over federal prisoners, including authority to "provide for their proper government, discipline, treatment, care, rehabilitation, and reformation." Also, the purpose of § 4002, giving the United States authority to contract with local bodies for the care of federal prisoners, is to provide "suitable quarters for the safekeeping, care, and subsistence" of all prisoners. In this regard, rates to be paid to local authorities may be such "as will permit and encourage the proper authorities to provide reasonable decent, sanitary, and healthful quarters and subsistence" for federal inmates. This federal involvement in encouraging proper treatment of federal prisoners is further evidenced by the policy statement and regulations which are incorporated into the contracts between the United States and local bodies,[6] aimed at assuring that
 
 
 29
 (f)ederal prisoners shall be placed in contract facilities which provide a secure, humane and orderly environment, and in which adequate attention is given to the maintenance of each inmate's health, safety, and general welfare.
 
 
 30
 Thus, there are several reasons for applying federal law to questions of general rights under federal/county contracts relating to federal prisoners, such as the one here. Because there is a federal regulatory scheme, there is a federal interest in assuring uniform treatment of federal prisoners. Ivy Broadcasting, supra, 391 F.2d at 490-91. And since the United States has a duty to care adequately for its prisoners, Muniz, supra, and is liable for its own negligence in that regard,[7] federal rights and obligations do "hinge on the outcome" of litigation in this area. See Miree, supra, 433 U.S. at 31, 97 S.Ct. 2490.
 
 
 31
 The fact that the rights and obligations of the contract may be interpreted by reference to federal law does not mean, however, that New York law may not be consulted. "In our choice of the applicable federal rule we have occasionally selected state law." Clearfield Trust, supra, 318 U.S. at 367, 63 S.Ct. at 575. Thus, the federal court may, if desirable, look to New York state law in this case to determine whether Owens is a third party beneficiary under the contract between the United States and Nassau County.[8]
 
 
 32
 Under New York law, there must be some intention that a third party benefit from an agreement before that party can sue under that contract. Lawrence v. Fox, 20 N.Y. 268 (1859). While such a beneficiary must derive more than merely incidental benefit from the contract, See Port Chester Electrical Construction Co. v. Atlas, 40 N.Y.2d 652, 655, 389 N.Y.S.2d 327, 330, 357 N.E.2d 983, 985 (1976), an intention to benefit a third party may be gleaned from the contract as a whole and the party need not be named specifically as a beneficiary. Newin Corp. v. Hartford Accident & Indemnity Co., 37 N.Y.2d 211, 219, 371 N.Y.S.2d 884, 891, 333 N.E.2d 163, 167 (1975).
 
 
 33
 Our reading of the contract in the record in this case indicates that Owens, as a federal prisoner, was intended to benefit from the agreement between the United States and Nassau County. The Policy Statement of the Bureau of Prisons, incorporated into the contract, includes numerous clauses which provide for the safekeeping and protection of federal prisoners. These provisions, set out in the margin,[9] suggest that a federal prisoner who was injured in a county jail, could claim status as an intended beneficiary of the contract.
 
 
 34
 Owens' claim as an intended beneficiary is buttressed by the fact that the United States owes him some duty of protection. Muniz, supra; Jones, supra. Though the United States cannot be held liable for the negligence of the county under Logue v. United States, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973),[10] it still can be held liable for its own negligence, Muniz, and this duty exists before the United States contracts with local authorities to take the prisoners. Therefore, it would appear likely that the prisoners can claim third party beneficiary status as ones to whom a duty is owed, Compare United States v. Ogden Technology Laboratories, Inc., 406 F.Supp. 1090, 1092 (E.D.N.Y.1973).
 
 
 35
 While this reading of the contract is, of course, subject to further exploration of the provisions of the contract in effect at the time Owens was injured,[11] and further elaboration of New York law on the subject, we feel that Owens does state what may be a valid claim as a beneficiary of the contract which should not have been dismissed.
 
 
 36
 Since Owens should have been allowed limited discovery and opportunity to amend his complaint to plead facts to support a legitimate § 1983 claim, and since he states what may be a valid contract claim, the case is reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Lloyd F. MacMahon, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 18 U.S.C. § 4002 provided:
 For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Director of the Bureau of Prisons may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons.
 Such Federal prisoners shall be employed only in the manufacture of articles for, the production of supplies for, the construction of public works for, and the maintenance and care of the institutions of, the State or political subdivision in which they are imprisoned.
 The rates to be paid for the care and custody of said persons shall take into consideration the character of the quarters furnished, sanitary conditions, and quality of subsistence and may be such as will permit and encourage the proper authorities to provide reasonably decent, sanitary, and healthful quarters and subsistence for such persons.
 This section was amended on November 9, 1978, to authorize the Attorney General, rather than the Bureau of Prisons, to contract with local authorities.
 
 
 [2]
 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 Though Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), held specifically that a municipality was a "person" for purposes of § 1983, counties and other "local government units" come within the holding. Id., at 690 & n. 54, 98 S.Ct. 2018.
 
 
 [3]
 The contract which appears in the record of this case is dated May 25, 1978. The policy statement which is incorporated into the contract is dated October 1, 1977. Since Owens was injured in October, 1976, and his complaint filed in April, 1977, the contract provided to Judge Pratt by the County of Nassau cannot be the specific contract at issue in Owens' claim. We assume that the fact that the county submitted the 1978 contract in response to Judge Pratt's order indicates a representation by the county that the earlier contract was identical, and we proceed on that basis
 
 
 [4]
 But see note 7 Infra
 
 
 [5]
 18 U.S.C. § 4042 provides:
 The Bureau of Prisons, under the direction of the Attorney General, shall
 (1) have charge of the management and regulation of all Federal penal and correctional institutions;
 (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
 (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;
 (4) provide technical assistance to State and local government in the improvement of their correctional systems.
 This section shall not apply to military or naval penal or correctional institutions or the persons confined therein.
 
 
 [6]
 See note 9 for specific examples
 
 
 [7]
 In Logue v. United States, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), the Supreme Court ruled that the United States was not liable under the Federal Tort Claims Act for the negligence of county jail officials with whom it had contracted pursuant to 18 U.S.C. § 4002. This holding was based on a finding that the county was a "contractor" who was specifically exempted from the provisions of the Federal Tort Claims Act. But even under that case, the federal government is still liable for its own negligence. Id., at 532-33, 93 S.Ct. 2215. Presumably, then, though the United States could not be held liable for the negligence of local officials with whom it had contracted, the federal government could be held liable for its own actions if it could be found to have been negligent in contracting with a local authority
 Also, in United States v. Muniz, 374 U.S. 150, 161-62, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), the Court notes that the uncertainty of subjecting the United States to the variations of state tort law was not sufficient reason to deny recovery to prisoners claiming injury from negligence of federal employees under the Federal Tort Claims Act. This does not mean, however, that there is not a significant federal interest involved in the contracting of the United States with local authorities for the care of federal prisoners.
 First, the duties of the federal government in such contracting are not just those related to day-to-day operations of a caretaker, as discussed in Muniz ; they are more closely tied to federal policy concerned with oversight of prison administration and general care of federal prisoners. Second, in Muniz the Court had to decide whether the variations of tort law from state to state were so great as to deny any recovery at all to a federal prisoner because of those variations, and decided to the contrary:
 (T)hough the Government expresses some concern that the nonuniform right to recover (embodied in the FTCA reference to state law) will prejudice prisoners, it nonetheless seems clear that no recovery would prejudice them even more. (Id., at 162, 83 S.Ct. at 1857.)
 Here, where it is not necessary to deal with that precise question, it is possible to recognize a federal interest in regulation of federal prisoners sufficient to ground federal jurisdiction.
 
 
 [8]
 See Miree v. DeKalb County, 433 U.S. 25, 30, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)
 
 
 [9]
 The contract summary of services to be provided calls for provision for "safekeeping, care and subsistence of persons held under authority of any United States statute."
 The policy statement attached to and incorporated into the contract states the policy that "Federal prisoners shall be placed in contract facilities which provide a secure, humane and orderly environment, and in which adequate attention is given to the maintenance of each inmate's health, safety, and general welfare."
 Chapter 1.1.6. provides: "Supervision in matters of sanitation and safety must be continuous."
 Chapter 1.7. provides: "Federal offenders shall not be subject to corporal punishment or other cruel and inhumane treatment. . . . Where it is necessary to use force with an offender, only the minimum force required to gain control of the situation and to prevent injury should be used."
 Chapter 1.7.2.1. provides: "Offenders who have violated institution rules and regulations or who become unmanageable in a facility or program may be subjected to disciplinary action in accordance with the institution (sic) local procedures, provided that these procedures are in accord with the U.S. Supreme Court decision in Wolff v. McDonnell." (418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).)
 
 
 [10]
 See note 7, Supra
 
 
 [11]
 See note 3, Supra