Robert L. STARSTEAD, et al., Plaintiffs,

v.

CITY OF SUPERIOR, et al., Defendants.

No. 80–C–235.

United States District Court,
W. D. Wisconsin.

March 16, 1982.

Lasker & Lasker, Madison, Wis., Walter Kelly, Milwaukee, Wis., for plaintiffs.

Toby E. Marcovich, Marcovich, Cochrane & Milliken, S. C., Steven H. Schweppe, Superior, Wis., for defendants.

### ORDER

CRABB, Chief Judge.

This is a civil action brought against the City of Superior, the Chief of Police, the Mayor, and two officers of the Superior Police Department. Claiming that each has been intentionally subjected to attack by defendants' police dogs without reasonable cause for their use, plaintiffs allege violations of their rights guaranteed under the Fourth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1985.

Plaintiffs seek monetary relief for these alleged constitutional and statutory violations and also seek monetary relief under a pendent state claim as provided by Wis. Stats. §§ 172.02 and 172.04. In addition, plaintiffs seek a declaratory judgment that "the use by the defendants of dogs not properly trained nor properly controlled to attack or to cause the arrest of any person without reasonable cause to believe that a police officer or innocent by-stander is in imminent danger of severe injury or loss of life is unconstitutional." Plaintiffs also seek to enjoin defendants from any further use of police dogs until such time as they have satisfied the court that they have developed and published a proper policy regarding the use of police dogs, have properly trained the dogs, have selected psychologically fit and properly trains persons to be empowered with the discretion to determine when and how the dogs shall be used, and have properly trained those selected police officers to control the dogs.

Presently before the court is a motion to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants City of Superior, Mayor Hagen, and Chief of Police Martinson. These defendants claim that the complaint fails to state a cause of action under 42 U.S.C. § 1983 against them, because plaintiffs have not effectively alleged the existence of a municipal policy directing the deprivation of their constitutional rights. Defendants also seek dismissal of the pendent state cause of action for failure to state a claim upon which relief can be granted.

For the purpose of deciding this motion, I accept as true all of the allegations of the complaint.

*Facts*

On July 10, 1979, plaintiff Starstead was riding in the City of Superior as a passenger in his van, driven by his girlfriend. The van was stopped by a police car. Upon being informed by the officer that no traffic violation ticket was to be issued, plaintiff Starstead went behind a nearby building from where he heard and saw several more police cars arrive. Without reasonable cause, defendant Graveson, ordered the police dog under his command to attack plaintiff. Plaintiff Starstead suffered bites, cuts and contusions to his upper hip and arm, and nearly lost his thumb while holding the dog back and being beaten about the head by Graveson.

Plaintiff Breezee alleges that on November 3, 1978, he was involved in an automobile accident in the City of Superior. Plaintiff Breezee left the scene of the accident, returning later to discover that the other party had left. He then returned to his home in the City of Superior and was attempting to call the police when five police cars arrived. The officers forcibly entered his home by violently breaking down the door. They proceeded upstairs to plaintiff's bedroom and ordered him to go downstairs. Plaintiff got off the bed and was handcuffed with his hands behind his back. Without reasonable cause, defendant Cadotte ordered the police dog under his command to attack plaintiff. Plaintiff suffered multiple dog bites, cuts and contusions to his left leg.

Plaintiff Hill alleges that on August 30, 1978, he was dining at the Elk's Club in the City of Superior when defendant Cadotte approached the building. At first, plaintiff Hill hid himself, but came forward when ordered to do so by Cadotte. Plaintiff Hill was unarmed, made no threatening moves, and explicitly told Cadotte that he was surrendering. Without reason, the police dog accompanying Cadotte attacked plaintiff. After a brief lull, defendant Cadotte ordered the dog to attack a second time. Plaintiff Hill suffered multiple dog bites, cuts and contusions to his inner left thigh.

Plaintiff Dolsen alleges that on September 24, 1978, he was engaged in suspicious conduct, siphoning gasoline in an apparent misdemeanor theft on the premises of the Russell Creamery in Superior, when defendant Cadotte arrived. Plaintiff Dolsen was unarmed and did not attempt to flee. Without a request for surrender and without reasonable cause, defendant Cadotte ordered the police dog under his command to attack plaintiff Dolsen. Before the dog reached plaintiff Dolsen, he shouted clearly that he surrendered. Cadotte made no effort to restrain the dog. Plaintiff Dolsen suffered multiple dog bites, cuts and contusions to his left arm and shoulder. The dog had to be forcibly pulled away from Dolsen after it failed to respond to Cadotte's verbal commands to cease.

Plaintiff Bartsias alleges that on August 13, 1978, he was riding in the car of plaintiff Orak in the parking lot of Builders Supply in Superior. They were attempting to leave the parking lot when another car containing friends of plaintiff Bartsias, including plaintiff Bjork, pulled close to the car in which plaintiff Bartsias was riding as it was backing up. A police officer stopped the car containing plaintiff Bjork. A scuffle took place between the police officer and the driver of the car containing plaintiff Bjork. Plaintiff Bjork got out of the car, and approached the scene of the scuffle. Plaintiff Bjork attempted to calm a second police officer who was about to intervene to end the scuffle between the driver and the first police officer. Defendant Cadotte arrived at the scene with a police dog and with the intent of commanding the dog to attack plaintiff Bjork. Plaintiff Bartsias intervened, and urged Cadotte not to use the dog to further aggravate the rapidly deteriorating situation. Cadotte commanded Bartsias to get back. Plaintiff Bartsias obeyed. Without reasonable cause, defendant Cadotte ordered the dog under his command to attack plaintiff Bartsias, who suffered multiple dog bites, cuts and contusions as a result.

Plaintiff Bjork alleges that immediately after the attack on plaintiff Bartsias, without reasonable cause defendant Cadotte or-

dered the police dog under his command to attack plaintiff Bjork. Plaintiff Bjork suffered multiple dog bites, cuts and contusions as a result of the attack.

Plaintiff Orak alleges that during the attack on plaintiff Bjork, Orak attempted to aid Bjork by trying to pull the dog from him. Plaintiff Orak was subdued, arrested by the police officers, and handcuffed with his hands behind his back. Without reasonable cause, defendant Cadotte ordered the dog under his command to attack plaintiff Orak. Plaintiff Orak suffered multiple dog bites, cuts and contusions as a result of the attack.

## Opinion

### I. Municipal Liability Under § 1983

■ It is now clear that cities are "persons" within the meaning of § 1983 and can be held liable for the unconstitutional conduct of their agents. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *overruling on this point, Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). It is equally clear that a "municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.[1] Municipal liability will be sanctioned only if

> the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

*Id.* at 690–691, 98 S.Ct. at 2035–2036. Additionally, liability may be premised upon a showing that a governmental "custom" is the motivating force behind the constitutional deprivation, even where that custom has not been approved formally through "official decision-making channels." *Id.* (footnote and citation omitted). Accordingly, proof of two elements is necessary to establish municipal liability under § 1983: plaintiffs must establish that (1) they have suffered deprivation of constitutionally or statutorily protected interests, and that (2) the deprivation was caused by an official policy, custom, or usage of the municipality.

### A. Constitutional Deprivation

■ According to their complaint, plaintiffs were subjected to excessive and unreasonable force by defendant officers Graveson and Cadotte in the course of being stopped and questioned or arrested. At this point I need not decide whether plaintiffs' invocation of each constitutional amendment in the complaint is proper. Allegations which evidence *some* constitutional deprivation will suffice.

Accordingly, while the alleged facts do not appear sufficient to sustain a cause of action arising out of the Eighth Amendment, *Ingraham v. Wright*, 430 U.S. 651, 664–671, 97 S.Ct. 1401, 1408–1412, 51 L.Ed.2d 711 (1977), they are sufficient to sustain a finding of a Fourteenth Amendment violation. *See Bellows v. Dainack*, 555 F.2d 1105, 1106 n.1 (2d Cir. 1977), in which the court held that the use of excessive force by a police officer during the course of an arrest constitutes a deprivation of liberty without due process of law in violation of the Fourteenth Amendment. In addition, the alleged facts are sufficient to state a cause of action arising out of the Fourth Amendment's prohibition against unreasonable seizures.

### B. Municipal Policy

Plaintiffs allege that the wanton misuse of police dogs by defendant Graveson and

---

1. In other words, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. (emphasis in original.) It can be held liable only for its own acts or omissions. "[A] municipality 'acts' by establishing or countenancing policies or practices which its employees are expected to follow in performing their duties." *Powe v. City of Chicago*, 664 F.2d 639, 649 (7th Cir. 1981). If the deprivation of one's constitutional rights results from the failure of a municipal employee to comport with official policy, then the employee should bear responsibility for such deprivation. Conversely, if the deprivation results from an employee's performance of his duties in accordance with established policies, practices, or customs, then the municipality may be held liable for such deprivation. *Id.*

Cadotte has occurred "within the knowledge and under the authority" of defendants Police Chief Martinson and Mayor Hagen. They further allege that the deprivation of plaintiffs' constitutional and statutory rights is the result of the inadequate policy of defendant City of Superior and the inadequate implementation of that policy by defendants Martinson and Hagen. Plaintiffs also allege that it has been the official policy of the City of Superior to cause and permit this deprivation of plaintiffs' rights.

Plaintiffs contend that the complaint effectively alleges that defendants City of Superior, Police Chief Martinson, and Mayor Hagen are liable under § 1983 because of their tacit encouragement of the unconstitutional conduct of the defendant officers, and because their failure to train and supervise defendant officers reached the level of "gross negligence" or "deliberate indifference." The sole issue involved in deciding this motion to dismiss is whether the complaint's allegations suffice to state a cognizable claim for relief against the city, the mayor, and the chief of police under § 1983.

Defendants contend that the complaint contains only conclusory allegations that the injuries resulted from an official policy; they cite *Smith v. Ambrogio*, 456 F.Supp. 1130 (D.Conn.1978), in support of the proposition that when a § 1983 action is premised upon an alleged policy as reflected by a number of prior occurrences, the necessary allegations must be made with particularity. Defendants further argue that the complaint does not reflect the type of persistent practice necessary to predicate liability on a "custom" theory.

■ Plaintiffs need not point to a specific, articulated municipal policy in order to withstand this motion to dismiss. An official policy or custom may be inferred from a complaint's allegations. *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981). Although "the mere allegation of a single act of unconstitutional conduct by a municipal employee will not support the inference that such conduct was pursuant to official policies," *Powe*, 664 F.2d at 650,[2] *see also Sterling v. Village of Maywood*, 579 F.2d 1350, 1357 (7th Cir. 1978), *cert. denied sub nom., Village of Maywood v. Sterling*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979), "where the plaintiff alleges a pattern or series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion." *Powe*, 664 F.2d at 650. *Glaros v. Perse*, 628 F.2d 679, 686 (1st Cir. 1980). *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir.), *cert. denied sub nom., Turpin v. West Haven*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

■ In the instant case, plaintiffs have alleged a systematic pattern of misuse of police dogs, and have buttressed this allegation with claims of five separate incidents involving seven persons. These allegations are sufficient to suggest that an inference may be drawn that a municipal policy in

---

**2.** *Cf. Owens v. Haas*, 601 F.2d 1242 (2d Cir. 1979), in which plaintiff alleged that he was beaten and severely injured by individual corrections officers while housed in the county jail. The district court dismissed the action against the county on the ground that plaintiff had failed to allege that this violent incident was one in a series of unconstitutional incidents of which the county was aware. The Second Circuit reversed, noting that "while some causal link must be made between the county's failure to train and the violation of constitutional rights, a single brutal incident such as this may be sufficient to suggest that link." *Id.* at 1246. Plaintiff was given the opportunity, after limited discovery, to amend his complaint to allege a causal link between his injury and an official policy or a series of incidents of which the county was aware. The court sought to balance the concern over entertaining groundless suits against municipalities, *Smith v. Ambrogio*, 456 F.Supp. 1130 (D.Conn. 1978), and the dictate of *Escalera v. New York City Housing Authority*, 425 F.2d 853, 857 (2d Cir.), *cert. denied* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970), that a § 1983 suit "should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims." Thus, the rough edges of the *Smith* approach to *Monell* pleadings have been smoothed by subsequent Second Circuit decisions.

some form was the motivating force behind the injuries suffered by plaintiffs.[3]

Defendants also contend that the complaint suggests that they be held liable because they refused to take affirmative action in regulating the use of police dogs; they argue that mere failure to act when confronted with a pattern of unconstitutional conduct is not actionable under § 1983, citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

*Monell* makes clear that municipalities are liable for *de facto* policies or customs which engender constitutional or statutory deprivations as well as those arising out of official policy. At first glance, *Rizzo* might seem to suggest that one alleged form of *de facto* policy, inaction, cannot be the basis for municipal liability under § 1983. In that case, the Court rejected the theory that liability could be predicated upon supervisory officials' *"failure* to act in the face of a statistical pattern" of subordinate misconduct. *Id.* at 376, 96 S.Ct. at 606 (emphasis in original). An entirely different gloss was put upon the *Rizzo* holding in *Monell*. There the Court noted that *Rizzo*

appears to stand for the proposition that "the mere right to control (subordinates) without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell*, 436 U.S. at 694 n.58, 98 S.Ct. at 2037 n.58 (citation omitted). This language suggests that the failure to supervise, combined with the exercise of some control, may form the basis for § 1983 liability. Accordingly, under *Monell*, municipal liability may be premised upon either the informal acts or omissions of policy-making officials. *See also Powe*, 664 F.2d 639; *Turpin*, 619 F.2d at 200.

Subsequent decisions in the lower courts have narrowed what seemed to be a broad rule of liability based upon inaction. Liability has attached only when "the failure to supervise or the lack of a proper training program was so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of the plaintiff's constitutional rights." *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).[4]

---

**3.** The case law reveals little dissension over the proposition that a grossly negligent or deliberate failure to respond to a pattern of unconstitutional conduct may form the basis for § 1983 liability. The courts have, however, disagreed as to whether a municipal policy can be inferred in the absence of such a pattern. *Compare Turpin*, 619 F.2d at 202; *Owens*, 601 F.2d at 1246; *with Hamrick v. Lewis*, 515 F.Supp. 983, 986 (N.D.Ill.1981); *Magayanes v. City of Chicago*, 496 F.Supp. 812, 814 (N.D.Ill.1980). In the instant case, plaintiffs have alleged such a pattern and that defendants had knowledge of this pattern.

**4.** While the Court of Appeals for the Seventh Circuit has not addressed this aspect of the *Monell* doctrine, its previous decisions suggest that the *Owens-Turpin* standard is appropriate. The court has refused to recognize a § 1983 cause of action premised on negligence; it has repeatedly held that intentional conduct or reckless disregard is an essential element of a civil rights claim. For example, in *Little v. Walker*, 552 F.2d 193, 197 n.8 (7th Cir. 1977), the court held that while mere negligence on the part of prison officials cannot support a prisoner's § 1983 action raising Eighth Amendment issues, "deliberate indifference," evidenced either by "actual intent or recklessness," will provide a sufficient basis for such

an action. Similarly, the Seventh Circuit has held that either intent or reckless disregard is an essential element of § 1983 claims of deprivation of life, liberty, or property without due process under the Fourteenth Amendment. *See Fulton Market Cold Storage Company v. Cullerton*, 582 F.2d 1071, 1080 (7th Cir. 1978) (property); *Jamison v. McCurrie*, 565 F.2d 483, 486 (7th Cir. 1977) (life). And in *Beard v. Mitchell*, 604 F.2d 485, 495 (7th Cir. 1979), the court noted that the term "recklessness" encompasses the separate elements of intent and culpability, both of which are necessary components of claims of Fifth Amendment deprivations. In *Bonner v. Coughlin*, 545 F.2d 565, 567 (7th Cir. 1976) (*en banc*), *cert. denied* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), the court reaffirmed the culpability component of a civil rights claim, stating that "[t]he guard's culpability here was not of sufficient magnitude to constitute a deprivation of rights under Section 1983." In the context of the Fourth Amendment right to be free from unreasonable search or seizure, if the officer acts without probable cause or uses excessive force, unreasonableness is shown. Although no other state of mind requirement exists, the plaintiff must still prove culpability in that he must prove not merely that he was searched or seized, but that the search or seizure was unlawful, i.e., unrea-

"[W]here senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the supervisor's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts."

*Turnpin*, 619 F.2d at 201.

■ Allegations of mere negligence in the failure to train or supervise are insufficient.[5] Municipal inaction must rise to the level of "deliberate indifference," evidenced either by actual intent or recklessness, or at the very least, "gross negligence." It must have created "a substantial probability that undesirable subordinate behavior will manifest itself in increased and significant amounts." *Spriggs v. City of Chicago*, 523 F.Supp. 138, 143 (N.D.Ill.1981).

■ At best, the defendants contend, the complaint can only be read to allege injuries resulting from improper training and supervision. The preceding discussion makes clear that plaintiffs' allegations are sufficient only if they can be read to assert that defendants' failure to respond to past instances of misuse of police dogs evidences either tacit authorization of the offensive acts or reckless disregard of or deliberate indifference to the right of plaintiffs and those similarly situated to be free from such constitutional deprivations. I conclude that plaintiffs have explicitly claimed that de-

---

sonable under the Fourth Amendment. *See Beard v. Mitchell*, 604 F.2d at 495 n.12, *citing Boscarino v. Nelson*, 518 F.2d 879, 881–882 (7th Cir. 1975).

**5.** The Supreme Court's recent decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), may seem to suggest that the Court is moving toward elimination of the state of mind requirement for constitutional violations made the subject of § 1983 actions. The Court held that a deprivation of property, attributable to the negligence of supervisory state officials, was a constitutional deprivation within the meaning of the due process clause of the Fourteenth Amendment. The Court further held that there had been no deprivation "without due process of law" since the availability of a post-deprivation tort award under state law provided the plaintiff with all the process he was due.

After *Parratt*, it is arguable that municipal negligence will be actionable under § 1983 if the state has failed to provide an adequate and readily available tort remedy. However, it is not clear whether the *Parratt* holding will be extended beyond the realm of property deprivations, and the concurring opinions suggest that it will be so limited. *See, e.g.*, 101 S.Ct. at 1918 (Blackmun, J., concurring).

Moreover, the adoption of such a doctrine would vitiate the Supreme Court's ratiocination in *Monell* and in *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Under the *Monell* doctrine municipalities can only be liable for "action pursuant to official municipal policy of some nature [that] *caused* a constitutional tort." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. (emphasis added.)

"Conduct is not unconstitutional merely because it may *proximately cause* harm to a citizen." *Beard v. Mitchell*, 604 F.2d 485, 495 (7th Cir. 1979). (emphasis added.) The opinion in *Parratt* does not indicate that the Court intend-

ed to undermine the *Monell* determination that proof of a *culpable* municipal custom or policy is necessary to establish a municipality's liability under § 1983. In *Adickes*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142, the Court held that to be actionable, a " 'custom or usage' ... must have the force of law by virtue of the persistent practices of state officials." *Id.* at 167, 90 S.Ct. at 1613. "This interpretation of custom recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior...." *Id.* at 168, 90 S.Ct. at 1614. The Supreme Court's invocation of the *Adickes* definition of custom in *Monell*, with its attendant emphasis on "force of law" and "compulsory rules of behavior," suggests that a custom or policy exists only when it is highly probable that the future conduct of subordinates will comport with the municipality's informal command. A municipality may be deemed negligent if its acts or omissions only slightly increase the risk of additional future subordinate misconduct, and the cost to society of such marginal behavior outweighs the cost of taking remedial action. Restatement of Torts 2d § 291. Holding a city liable for mere negligent failure to train or supervise would be contrary to the holdings of *Monell, Rizzo*, and *Adickes* because a city can be deemed negligent even if its inaction has not rendered subordinate misconduct *substantially* more likely to occur. Liability will attach only if municipal supervisory officials knew or should have known that their subordinates were engaging in unconstitutional conduct, and they failed to take remedial action. In summary, this inaction must amount to deliberate indifference or gross negligence. *See also Spriggs v. City of Chicago*, 523 F.Supp. at 143.

fendants acted recklessly. Plaintiffs allege that the "wanton misuse" of police dogs by defendants Graveson and Cadotte has occurred "within the knowledge and under the authority" of defendants Martinson and Hagen. The adjective "wanton" connotes deliberate, reckless conduct in disregard of the rights of others. *See* Black's Law Dictionary (5th ed. 1979). Fairly read, the complaint alleges that such "misuse" includes a general failure to supervise, and a failure to select psychologically fit and properly trained persons to handle the dogs.[6]

The Court of Appeals for the Seventh Circuit has taken a liberal approach to construing *Monell* complaints against municipalities. In *Murray v. City of Chicago*, 634 F.2d 365 (7th Cir. 1980), plaintiff alleged past acquiescence in prior misconduct as the basis for the existence of a municipal policy. The complaint revealed no details of the alleged past acquiescence or prior incidents of misconduct. The court of appeals reversed the district court's dismissal of the action against the city, holding that

> as to the city, it is possible that existence of a policy, custom, or practice might be established. If plaintiff succeeds in proving her allegation that similar unwarranted arrests have occurred frequently, to the knowledge of the parties involved, it might be possible to show dereliction of duty of constitutional dimension upon the part of the responsible officials.

*Id.* at 367 (footnote omitted). *Murray* suggests that the court of appeals deems a *Monell* complaint sufficient if the plaintiff pleads "the skeletal outlines of a viable theory of municipal culpability." *Spriggs*, 523 F.Supp. at 145. *See also Powe*, 664 F.2d at 651. I conclude that plaintiffs have effectively alleged the existence of a municipal policy directing the deprivation of their rights.

## II. *Pendent State Claim*

■ Plaintiffs also seek relief under a pendent state claim; specifically they invoke Wis.Stats. §§ 172.02 and 172.04. Section 172.02 governs the finding of stray animals, subsequent notification of the owner, and payment by the owner to the finder of all reasonable charges incurred for the animal's temporary keep. Section 172.-04 governs the appraisal of stray animals. It is obvious that plaintiffs have mistakenly pursued the wrong state claim; that they meant to cite Section 174.02, entitled Owner's Liability, which states in pertinent part that

> the owner or keeper of any dog which has injured or caused the injury of any person . . . shall be liable to the person so injured . . . for all damages so done. . . .

Section 174.04, entitled Treble Damages, provides in pertinent part that

> any person suffering personal injury by any dog . . . may give notice to the owner or keeper of the act done, and if after such notice such dog shall injure any person . . . the owner or keeper shall be liable to pay the person injured thereby treble damages.

Plaintiffs had notice in the form of defendants' motion to dismiss that they had pleaded the wrong state claim. They made no attempt to amend the complaint to correct this error. Without expressing any opinion as to whether a claim under § 174.-02 has been stated, I will grant defendants' motion to dismiss plaintiffs' pendent state claim under §§ 172.02 and 172.04.

### ORDER

IT IS HEREBY ORDERED that defendants' motion to dismiss is GRANTED with respect to plaintiffs' pendent state claims;

---

**6.** Even if plaintiffs had not alleged recklessness by the use of "wanton," I would find the complaint sufficient. Plaintiffs allege a "systematic pattern of abuse by and misuse of police dogs by the Superior Police Department." They further allege that there is a continuing conspiracy to deprive plaintiffs and those similarly situated of the equal protection of the laws and that it is the official policy of the city to cause and permit such deprivations. It is certainly possible to construe these allegations as a charge that "the pattern of past violations has been so pervasive" that inaction on the part of defendants Hagen, Martinson, and the City of Superior "can only be deemed reckless." *Spriggs*, 523 F.Supp. at 144.

with respect to plaintiffs' constitutional claims, the motion to dismiss is DENIED.