**Dawn M. VOIE, Plaintiff,**

v.

**Charles G. FLOOD and County of Rock, a body corporate, Defendants.**

**No. 83–C–799–S.**

United States District Court, W.D. Wisconsin.

July 18, 1984.

Louis X. Mineau, Bolgrien, Ruth & Rentz, Beloit, Wis., for plaintiff.

John W. Roethe, Roethe, Buhrow, Roethe & Pope, Edgerton, Wis., Thomas A. Schroeder, Corp. Counsel, Janesville, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court is the motion filed on behalf of defendant Rock County for summary judgment. Plaintiff's claim is that defendant Charles Flood, a Sheriff's Deputy for Rock County, Wisconsin, used excessive force in arresting the plaintiff for a minor traffic violation, thereby breaking her arm. Both Flood and the County are allegedly liable under 42 U.S.C. § 1983 and under State common law. The facts, as they appear from the complaint, and those that are undisputed with respect to the County's liability, are as follows:

### FACTS

On December 12, 1982, at approximately 8:00 P.M., in the Township of Prairie, within Rock County, Wisconsin, defendant Flood, in the course of his duties as a Deputy Sheriff for the County, stopped plaintiff for a minor traffic violation. After determining that she may have been operating the vehicle without a valid driver's license, Flood placed her in the back seat of the squad car, and informed her that he was going to transport her to the Sheriff's office. According to plaintiff, a 19-year-old female resident of the County, she asked the officer to lock her vehicle to prevent theft of material in the car. When he refused, she got out of the squad car in order to look after securing her car herself. Flood approached her from behind, grabbed her left arm and turned it behind her back, thereby breaking a bone in her arm near the wrist. Plaintiff was later transported to a hospital by another officer after she refused to reenter defendant Flood's car. Flood allegedly told her that he would not transport her to the hospital.

It appears from the record that Flood has been a Rock County Deputy Sheriff since 1980, and that before his current employment he had been employed in a law enforcement capacity as an Army MP, as a Rock County jailer under the CETA program, as a patrolman for the City of Milwaukee, Wisconsin; and, most recently, a patrolman for the Village of Evansville,

748

Wisconsin for the year previous to his present employment. Flood had also had a fairly extensive educational background in the field of police work.

Prior to his employment, the County had subjected Flood to a background check, including inquiries to his previous employers, which disclosed no history of violence toward the public in his capacity as a police officer. Nor, during his tenure as Deputy Sheriff, had Flood been the subject of any written complaints of use of excessive force prior to the incident involving the plaintiff. Plaintiff has submitted the affidavit of an individual who alleges that he was assaulted by Flood upon being arrested for drunk driving. This incident occurred in May, 1983.

The County has promulgated a number of policies relating to law enforcement matters, copies of which have been submitted for purposes of this motion. All such policies were effective on April 10, 1980. The County has a policy of encouraging and supporting educational activities of deputies which are work related. The County has a policy which directs deputies to treat the public courteously and to avoid the use of excessive force in general terms. The same policy requires a written report by the officer of any use of force. Another policy explicitly states that an officer is to use the "minimum amount of force that is reasonably necessary to perform his lawful duties." The same policy specifically forbids the continued use of force on a subject who has ceased to resist, escape, or otherwise violate the law. Another policy instructs that force of any degree "is a privilege to be exercised by peace officers only as a last resort," which should be used only to the extent "reasonable and necessary to effect a lawful purpose." The same policy statement continues to warn that excessive force complaints are the most significant legal claims made against law enforcement agencies, explains that courts use a balancing test to decide questions of the proper amount of force, and that "the balance is determined by exerting only that additional force to accomplish the necessary task." This policy concludes by warning that use

of force reports ought to be filed promptly to avoid the appearance of cover-up, and that "*probable cause* [must be present] before a situation even results in any use of force." (Emphasis in original) Another policy sets forth explicit arrest procedures and discusses the use of deadly force.

Finally, Policy Statement 6.02, entitled *Complaints Against Rock Co. Sheriff's Department Employees*, contains explicit instructions as to the filing and investigation of complaints against police officers. The process begins with an allegation of misconduct by a private citizen or another employee of the Department. Such complaints are first referred to shift supervisors, who are to report such complaints to the C.I.A. (Internal Affairs Division) who, in consultation with the Undersheriff, is to determine whether investigation is necessary. Investigations are conducted by the Captain of Detectives. Such investigations are to be "thorough and objective," requiring interviews of all witnesses and collection of evidence. The policy provides for requesting the officer to take a polygraph examination. The Captain of Detectives then makes a confidential report to the Undersheriff, who determines the sufficiency of the investigation, decides whether or not the complaint is sustained, and recommends disciplinary action if appropriate. Disciplinary proceedings are then commenced. The policy appears to contemplate appeals to the Sheriff, at which time a Disciplinary Review Board reviews the investigation and recommends final action to the Sheriff.

It appears that no investigation is undertaken without the filing of a written complaint.

MEMORANDUM

Rock County argues that it cannot be liable under 42 U.S.C. § 1983 because it had no policy, custom, law or ordinance which can be said to have caused plaintiff's injury, citing *Monell v. Dept. of Social Services of New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It

further argues that it is immune from vicarious liability for the intentional tort of Flood under State law, citing Wis.Stat. § 893.80(4). The Court agrees on both counts.

■ Plaintiff apparently concedes that the county, by virtue of its stated policies, neither encourages nor condones the use of excessive force on the part of its deputies. *Cf. Starstead v. City of Superior*, 533 F.Supp. 1365 (E.D.Wis.1982) (tacit authorization of offensive acts may support a finding of liability against a municipality). Plaintiff argues, however, that the County's failure to investigate unless a written complaint against the officer is received, even in the face of injuries to the arrestee, is an omission of such magnitude that imposition of liability is justified.

There are so many weaknesses in this argument that it is difficult to know where to begin. First, assuming that the County's failure to investigate the circumstances of an arrest when the arrestee is injured absent a written complaint can be faulted somehow, the County cannot, to a legal certainty, be held accountable under the standard for liability applicable to municipal omissions. In *Lenard v. Argento*, 699 F.2d 874 (7th Cir.1983), the Court approved the statement of the Second Circuit in *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979), cert. denied, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407:

> ... [A] mere failure by the county to supervise its employees would not be sufficient to hold it liable under § 1983. However, the county could be held liable if the failure to supervise or the lack of a proper training program was so severe as to reach the level of a "gross negligence" or "deliberate indifference" to the deprivation of the plaintiff's constitutional rights.

*Lenard*, at 885. The failure of the County to investigate injuries to arrestees, absent a written complaint, could not conceivably rise to this level of culpability.

Second, § 1983 liability must be based on strict rules of causation. As was stated in

*Powe v. City of Chicago*, 664 F.2d 639 (7th Cir.1981):

> ... [U]nder *Monell*, the crucial question is whether the unconstitutional acts complained of were *caused by* a policy or custom of the municipality.

*Id.* at 650 (emphasis in original). It stretches logic well past the breaking point to suggest that investigating only written complaints, and failing to investigate the circumstances of injuries to those arrested, somehow caused or encouraged Flood to assault the plaintiff. Such an inference is simply not possible. A factfinder would have to believe that Flood acted, at least in part, because he believed it was unlikely that plaintiff would complain. It would be extraordinary, if not perverse, for the factfinder to come to such a conclusion. Absent any indication that prior instances of misconduct by Flood went unreported, the complaint is clearly insufficient with regard to causation. *See also Ekergren v. City of Chicago*, 538 F.Supp. 770 (N.D.Ill.1982).

■ This is also the reason that plaintiff's argument concerning the language in § 1988 is without merit. Plaintiff argues that 42 U.S.C. § 1988 subsumes the state law concerning municipal liability into a § 1983 suit. She argues that the apparently contrary holding of *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) is of questionable vitality in light of the later holding in *Monell*, and points to Wisconsin's rejection of municipal sovereign immunity in *Holytz v. City of Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962). These two events, she argues, should make municipalities vicariously liable under § 1983.

This argument totally misreads *Monell* and § 1983. The Supreme Court in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) held that municipalities were not "persons" within the meaning of § 1983 because of the doctrine of sovereign immunity as it was understood at the time of the passage of the Civil Rights Acts subsequent to the Civil War. When the Court reexamined this holding in *Monell*, and found it wanting, it overruled *Monroe*

to that extent only, and discussed, in what plaintiff chooses to call dicta, the extent of municipal liability. The Court rejected the notion of liability for municipalities on a *respondeat superior* basis, thus reiterating prior holdings that had rejected liability on such ground for natural persons. *See*, for example, *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In other words, the Court in *Monell* made clear that the causation required by § 1983 was to be applied to municipalities to the same extent that it had been to natural persons.

Third, the Court can find no fault with the policy of requiring a written complaint before invoking the investigatory procedures spelled out in the County's policy statement. Such a policy seems perfectly reasonable in that such an investigation almost certainly will require the cooperation of the victim of the use of excessive force. Nor is there anything inherently wrong with failing to investigate the circumstances of the arrest of one who appears at the police station with obvious injuries, since it does not always follow (indeed, it probably does not usually follow) that the injuries were caused by the arresting officer. Plaintiff's allegations could not even support a claim of simple negligence against the County.

In short, plaintiff's § 1983 claims against the County are without merit because the County's failure to investigate injuries to arrestees unless a written complaint is filed does not rise to the level of culpability necessary to support liability and, at any rate, did not cause plaintiff's injuries.

▪ Plaintiff urges the Court to exercise jurisdiction over her pendent State claim against the County regardless of the decision on her federal claim against the County. The County does not significantly argue otherwise, and bases its motion in this regard on substantive grounds. The Court

will, without specifically deciding that it has the power to do so, exercise pendent jurisdiction of the State law claim against the County because it clearly arises out of "a common nucleus of *operative fact."* *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

It is clear that plaintiff attempts to base the County's liability in the pendent State claim on the ground that the County is vicariously liable for the officer's use of excessive force.[1] The question is whether such a claim can be advanced in the face of Wis.Stats. § 893.80(4), which states:

> (4) No suit may be brought against any ... governmental subdivision ... for the intentional torts of its officers, officials, agents or employes nor may a suit be brought against such subdivision ... for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Under no circumstances can plaintiff's complaint be read to allege anything but an intentional tort against Flood. For example, plaintiff alleges, at paragraph 22 (within the pendent state claim section of her complaint) that:

> The defendant, Charles G. Flood, in effectuating an arrest of the plaintiff on December 12, 1982, intentionally and unlawfully used excessive force and violence directed toward her person, without her consent, and made unlawful bodily contact with her.

This would clearly be an allegation of common law battery, an intentional tort even if plaintiff had not chosen to use the term "intentional" in her complaint. This is clearly within the plain meaning of the first clause of the above-quoted statute.

▪ Furthermore, if the pendent state claim could be read to allege that the County was liable for its own acts or omissions (a reading which is apparently not pressed,

---

1. Plaintiff does not now contend that the County knew of any violent proclivities on the part of Flood prior to the incident in question here, nor is there any evidence in the record of such knowledge. The inferences available at this stage are all the other way—that the County had no such knowledge nor any reason to believe that Flood was violent or would be inclined to the use of excessive force.

given plaintiff's failure to urge such a reading in the briefs submitted), the second clause of the statute would bar her claim. This is so whether the County's responsibility is based on its failure to discipline a violent police officer or its failure to adopt a policy of investigating injuries to arrestees regardless of whether a written complaint was offered.

A State law claim based on a failure to discipline was the subject of this Court's recent decision in *Wedgeworth v. Harris*, 592 F.Supp. 155 (W.D.Wis.1984). The Court held that a claim that the City of Madison was liable for its failure to discipline a police officer who had been guilty of several instances of sexual harassment, for the rape of the plaintiff, was foreclosed by § 893.80(4) because the whole subject of police discipline was within the judicial immunity granted by that section. *See Salerno v. City of Racine*, 62 Wis.2d 243, 214 N.W.2d 446 (1974). Therefore, it is clear that the failure to discipline in this case could not support liability even if there was some evidence of knowledge on the part of the County of the violent proclivities of Flood.

It is further clear that, even if the failure to adopt a policy of investigating injured arrestees could be said to be negligent (which it cannot), such an act or omission is within the plain meaning of the statute's grant of immunity for legislative decisions.

Accordingly, the County's motion for summary judgment must be granted.

### ORDER

IT IS ORDERED that the motion of defendant Rock County for summary judgment is GRANTED.