Fuchsberg, J.
This action arises out of the infamous "salad oil swindle” of 1963, involving the collapse of the Allied Crude Vegetable Oil Refining Corporation, which had, among other effects, the bankruptcy of Ira Haupt & Co. (Haupt), a member firm of plaintiff New York Stock Exchange, Inc. (Stock Exchange).
The complaint alleges seven causes of action. The first two, which seek recovery on an excess bond, are not involved here. In the third' through seventh causes of action, which are the subject of this appeal, plaintiffs, the Stock Exchange and its wholly-owned subsidiary, Newin Corporation (Newin), seek recovery of $9.5 million damages on each cause of action, sustained as a result of alleged fraud and deceit committed by defendants, the Continental Insurance Company of America (Continental) and its wholly-owned subsidiary the Fidelity & Casualty Company of New York (Fidelity), in the course of the bankruptcy proceedings. It is alleged that the fraud, which included subornation of perjury, has resulted, or will result, in the inability of the Stock Exchange to recover its losses incurred in rescuing the public customers of Haupt.
Whether plaintiffs have causes of action to recover damages for such conduct is the fundamental issue on this appeal.
Haupt, as a member of the Stock Exchange, was required to carry blanket bonds, in accordance with Stock Exchange rules. The rules’ primary purpose is to protect the investing public, the customers of member firms. The Stock Exchange itself purchases excess insurance to cover losses in any case where a *215 member firm’s insurance is insufficient to cover the loss. Fidelity was the sole underwriter of the Haupt bonds. Continental, the parent company of Fidelity, was one of the carriers underwriting the Stock Exchange’s excess coverage.
In 1965, Haupt’s bankruptcy trustee commenced an action on the primary bonds. $58,000,000 was sought, essentially on the theory that Haupt’s financial demise was caused by the infidelity of Haupt employees within the coverage of the Haupt bonds. It is alleged that, in the course of defending that law suit, two individuals, one of whom was an officer of both Fidelity and Continental and the other an attorney acting for both companies, corrupted a key witness, one Jack E. Stevens, a Haupt employee, and, as a result, Stevens was induced to change his testimony to the detriment of the trustee’s case. Consequently the trustee opted to settle his claims for $6,000,-000, a mere fraction of their value; none of the claim, under the language of the settlement agreed upon, was attributed to the "dishonest acts” of Haupt personnel. The bankruptcy referee approved the settlement over plaintiffs’ objections but refused to make any finding on the validity of the plaintiffs’ fraud charges.
Subsequently, plaintiffs demanded payment under the excess coverage policies. Continental and its coinsurers refused to pay, contending, among other things, that the excess coverage is not payable because the settlement of $6,000,000 was less than the face amount, $14,000,000, of the primary coverage under the Haupt bonds. The defendant insurers took the position that no excess coverage is payable when the primary coverage had not been exhausted. This action followed.
The gravamen of the five causes of action before us is that defendants’ alleged conduct in suppressing testimony and suborning perjury in the trustee’s action was directed not merely at defeating the trustee’s claim under the Haupt bond but also at frustrating plaintiffs’ separate claim under the Newin bonds as well.
The first of these, denominated the third cause of action, is based upon a theory of common-law fraud and deceit. It alleges that, by reason of the fraudulent conduct of the defendants, the recovery on the claim under the primary insurance policy, which served as a deductible under the Newin bonds, was far less than the amount would otherwise have been. Further, it alleges that, but for the defendants’ *216 misconduct, litigation on the Newin bonds would have been completely unnecessary.
The fourth cause of action is brought against Continental and others as carriers of the Newin bonds, predicated on a theory of breach of implied contract of fair dealing.
The fifth cause of action, brought against Fidelity only, is grounded on tortious interference with plaintiffs’ rights under the Newin bonds.
The sixth cause of action, also brought against Fidelity only, pleads third-party beneficiary rights under the Haupt bonds. It asserts that the Newin and Haupt bonds are inextricably related and that Fidelity breached its duty to conduct a fair and honest investigation of the claim made under them.
The seventh cause of action, brought against Continental only, alleges that the conduct of Continental and its officers also constituted a tortious interference with plaintiffs’ rights as third-party beneficiaries of an obligation to deal honestly and fairly under the Haupt bond.
Defendants urge that the fifth through seventh causes are barred by res judicata (or collateral estoppel), release, and the rule that no civil cause of action lies for subornation of perjury at a prior civil proceeding. They additionally contend that, with respect to the sixth and seventh causes of action, since plaintiffs are not named as insureds under the Haupt bonds, they may not sue under them.
Special Term rejected these contentions in toto, and the Appellate Division, First Department, unanimously affirmed, but granted leave to appeal on a certified question.
Res judicata and release need not long detain us. It is clear from even a cursory reading of the bankruptcy referee’s opinion, that he made no finding as to the truth or falsity of plaintiffs’ charges. He dealt only with the rights of the Haupt estate. The issues concerning the excess coverage bonds were not before him. The question of whether Fidelity’s conduct damaged plaintiffs by breach of any independent duties owed to them could not be litigated in that forum. Unless the issues have "necessarily been decided” in earlier proceedings, res judicata (Smith v Kirkpatrick, 305 NY 66) and collateral estoppel are unavailable as defenses to prevent their trial (Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 71; see Rosenberg, Collateral Estoppel in New York, 44 St. John’s L Rev 165).
*217 As to the release, it is executed solely on behalf of the "Trustee, for himself, his predecessors, successors and assigns, and for and on behalf of the bankrupt Estate”. It did not, and indeed could not, effectively surrender the independent claims that are the subject of this action and which did not belong to the bankrupt estate. Even if that were not so, plaintiffs allege that the release’s execution was improperly obtained. Such a claim is well recognized (Byrnes v National Union Ins. Co., 34 AD2d 872; see Goldsmith v National Container Corp., 287 NY 438) and, in and of itself would be sufficient to support a denial of this branch of the motion.
Appellants’ chief contention is that the entire action is barred by the ancient rule that the courts of this State will not entertain civil actions for damages arising from alleged subornation of perjury in a prior civil proceeding (Ross v Preston, 292 NY 433; Crouse v McVickar, 207 NY 213, 219; Ross v Wood, 70 NY 8; Adams v Sage, 28 NY 103; Young v Leach, 27 App Div 293). That rule is based upon the policy that testimony on factual issues occurs with such frequency in litigation that to permit a judgment or a settlement made subsequent to the giving of such testimony to be challenged because it was allegedly tainted with perjury or subornation "would be productive of endless litigation * * * [as] it would * * * allow the losing party to try the cause over again in a counter suit, because he was not prepared to meet his adversary at the trial of the first suit.” (Smith v Lewis, 3 Johns 157, 168 [Kent, Ch. J., concurring].) Thus, the losing party’s remedy is limited to a direct appeal in the case where the alleged perjury occurs. (See McClintock, What Happens to Perjurers, 24 Minn L Rev 727.)
However, there is an exception: A cause of action for fraud and deceit will lie, even though perjury is present, where the perjury is merely a means to the accomplishment of a larger fraudulent scheme (Verplanck v Van Buren, 76 NY 247; Oldham v McRoberts, 37 Misc 2d 979, affd 18 AD2d 773, mot for lv to app den 18 AD2d 884; see cases collected in Actionability of Conspiracy to Give or to Procure False Testimony or Other Evidence, Ann., 31 ALR3d 1423, 1438).
In Burbrooke Mfg. Co. v St. George Textile Corp. (283 App Div 640, 641, 643-644) then Justice (now Chief Judge) Breitel outlined the policy considerations that apply in such cases:
"The distinction is based upon the principle that a fraudulent scheme which is greater in scope than the issues that were determined in the action or proceeding may become the *218 basis of an action. This is so, although some of the issues had been determined adversely to the plaintiff in a prior proceeding to which, normally, the doctrine of res judicata would apply.
* * *
"Involved is the need for separating two entirely different categories of problems with which courts are confronted. On the one hand, there is the profound and imbedded philosophy that decided issues remain decided, and that litigation come to an end. On the other hand, there is the equally compelling policy that fraud be frustrated, and consequently that one who defrauds not gain sanctuary merely because a narrow issue, by very reason of his fraud, has been determined in his favor * * * If the total objective of the scheme was the determined issue, then there is a bar; but if the total objective was greater than the determined issue, and the determined issue was but a step or a part of the total objective, then there is no bar”.
Plaintiffs have alleged that the fraud committed in the bankruptcy proceedings is extrinsic and part of a larger scheme which goes beyond the scope of the trustee’s law suit, which involved only the Haupt bonds. They do not charge fraud in the inducement to settlement. They are not seeking its rescission. Nor are they seeking indirectly to obtain a further recovery on the Haupt bonds. Rather, they accept the fact of settlement but seek damages because Fidelity’s fraud was intended to extend beyond those bonds, so as to defeat or make more difficult any recovery under the excess coverage as well.* Moreover, unlike the cases in which recovery has been precluded, plaintiffs had no effective remedy in the prior action; an appeal could not have vindicated the independent rights pressed here (Byrnes v Owen, 243 NY 211, 219; Ann., 38 ALR3d 1423, 1437). Whether these allegations can be proved at a trial is not before us. Proof often falls short of pleading. All we hold is that plaintiffs have pleaded causes legally sufficient on their faces.
Defendants’ other arguments, addressed solely to the sixth and seventh causes of action, to the effect that plaintiffs *219 cannot sue as third-party beneficiaries of the Haupt bonds because they are not named insureds, are also insufficient bases upon which to strike those causes of action at this juncture.
In McClare v Massachusetts Bonding & Ins. Co. (266 NY 371), a creditor of a fight promoter sued on a bond taken out by the promoter at the direction of the State Athletic Commission, to protect creditors. We upheld the creditor’s right to sue on the bond as a third-party beneficiary even though he was not directly named on the bond, finding that the circumstances evidenced a clear intent to protect creditors (see, also, Daniel-Morris Co. v Glens Falls Ind. Co., 308 NY 464; Gobos v Fuller Co., 5 AD2d 773). These cases are not inapposite because they involve surety or construction bonds, whereas the case before us involves indemnity bonds. Daniel-Morris makes it clear that it is the intent of the parties as revealed in the "circumstances under which the bond was written” (p 468) that governs the legal result, not the formal label which is asserted at the top of the document. The mere absence in a contract of any provision either excluding or including such coverage does not necessarily preclude proof that unnamed third-party beneficiaries were intended to be benefited; Justice Amsterdam at Special Term correctly noted that on the face of these pleadings "plaintiffs have sufficiently brought themselves within the class of third party beneficiaries of the policies, though not named in the bonds” citing McClare (supra). (See, also, 4 Corbin, Contracts, § 801, p 218 [third-party coverage deemed intended "unless the words of the policy are clearly to the contrary”].)
Accordingly, the order of the Appellate Division should be affirmed and the certified question answered in the affirmative.

 Plaintiffs say they expect to prove, among other things, that carriers of excess insurance ordinarily rely upon the carrier of the primary insurance to adjust the claim and that the failure to recover the face amount of the Haupt bonds is being used as a defense to the excess coverage actions as a result of a calculated plan to create such a hiatus between settlement and coverage so as to frustrate payment of the excess.