**ALBERTA GAS CHEMICALS, LTD., Plaintiff,**

v.

**CELANESE CORPORATION and Celanese Chemical Company, Inc., Defendant.**

**No. 80 Civ. 1855.**

United States District Court, S. D. New York.

Oct. 7, 1980.

Freeman, Meade, Wasserman & Schneider, New York City, for plaintiff; Melvyn Freeman, Jack Gumpert Wasserman, Lawrence S. Fogelson, New York City, of counsel.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendants; Asa Rountree, Steven Klugman, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

In this diversity action, Alberta Gas Chemicals, Ltd. ("Alberta Gas") sues for alleged fraud and unfair competition by Celanese Chemical Co., Inc. ("Celanese"), a wholly owned subsidiary of Celanese Corp. Alberta Gas is Canada's largest producer of methanol; Celanese is the largest producer of methanol in the United States. Alberta Gas claims that Celanese engaged in "an unlawful scheme and plan designed, among other things, to delay or prevent Alberta Gas from constructing additional facilities to produce methanol" in Canada and to reduce plaintiff's capacity to compete with Celanese. (Complaint ¶ 8.) The alleged scheme consists entirely of Celanese's conduct at a hearing before the United States International Trade Commission ("Commission"), held to determine whether imports of methanol from Canada were injuring, or were likely to injure, the domestic methanol–producing industry.

Specifically, Celanese is alleged to have "intentionally presented materially false and misleading testimony to the Commission relating to the principal issues before the Commission, including (i) the failure to disclose Celanese's plans for the substantial expansion of its ... methanol producing facilities in Alberta and the United States, and (ii) the projected demand for methanol." (Complaint ¶ 8.) Celanese allegedly failed to tell the Commission that it was planning to construct extensive new facilities to produce methanol. (Complaint ¶ 9.) Moreover, Celanese testified that demand for methanol would increase in the United States during the 1980's at a rate no great-

er than 6% to 7%, whereas it allegedly "believed at the time ... that the demand for methanol in the United States during that period would increase at a rate of at least 10% per annum." (Complaint ¶ 10.)

The Commission concluded unanimously that imports of methanol from Canada were not currently injuring the domestic methanol–producing industry, but determined by a vote of three to two that Canadian imports were likely to injure the industry in the future. Once the Commission made its finding of possible future harm, the Treasury Department was required to issue a so–called Finding of Dumping under the Anti–Dumping Act of 1921, 19 U.S.C. §§ 160–171. The effect of this finding was to subject future imports of Canadian methanol to a special dumping duty.

Plaintiff's claim of injury and prayer for relief rest ultimately on its allegation that "[u]pon information and belief, had Celanese Chemical stated the truth as it was known to it with respect [to its expansion plans] and the demand for methanol in the United States, the Commission would not have found that there was a likelihood of future injury to the United States methanol industry by reason of the sale of methanol to the United States by Alberta Gas." (Complaint ¶ 11.) Alberta's alleged injuries have resulted solely from the Commission's determination, so for plaintiff to succeed that determination must be shown to have been caused by Celanese's alleged misrepresentations.

Defendant Celanese moves to dismiss the complaint on three grounds: (1) lack of jurisdiction; (2) failure to exhaust administrative remedies; and (3) failure to state a cause of action. All three contentions seem meritorious, but dismissal is now granted for plaintiff's failure to state a cause of action.

■ Under New York law, "a plaintiff who has lost his case because of perjured testimony cannot sue the perjurer for damages." *Anchor Wire Corp. v. Borst*, 277 App.Div. 728, 729, 102 N.Y.S.2d 871, 872 (1st Dep't 1951). Indeed, the rule is universally recognized as necessary to prevent matters from being endlessly relitigated. "Thus, the losing party's remedy is limited to a direct appeal in the case where the alleged perjury occurs." *Newin Corp. v. Hartford Accident & Indemnity Co.*, 37 N.Y.2d 211, 217, 371 N.Y.S.2d 884, 889–90, 333 N.E.2d 163, 166 (1975). *See generally* 70 C.J.S. *Perjury* § 92 (1951 & Supp. 1979); Annot., 54 A.L.R.2d 1298 (1957 & Supp. 1978).

Plaintiff correctly asserts an exception to this rule "where the perjury is merely a means to the accomplishment of a larger fraudulent scheme." *Newin Corp. v. Hartford Accident & Indemnity Co., supra*, 37 N.Y.2d at 217, 371 N.Y.S.2d at 890, 333 N.E.2d at 166. The "'compelling policy that fraud be frustrated [requires] ... that one who defrauds not gain sanctuary merely because a narrow issue, by very reason of his fraud, has been determined in his favor. If the total objective of the scheme was the determined issue, then there is a bar; but if the total objective was greater than the determined issue, and the determined issue was but a step or a part of the total objective, then there is no bar.'" 37 N.Y.2d at 218, 371 N.Y.S.2d at 890, 333 N.E.2d at 167 (quoting *Burbrooke Manufacturing Co. v. St. George Textile Corp.*, 283 App.Div. 640, 643–44, 129 N.Y.S.2d 588, 592 (1st Dep't 1954) (Breitel, J.)).

■ Plaintiff fails to come within this exception. It alleges that defendant's conduct at the Commission also was intended "to delay or prevent Alberta Gas from constructing additional facilities to produce methanol in Alberta ...." (Complaint ¶ 8.) But this allegation is insufficient to create a larger scheme of which the perjury was merely a part. The larger scheme must entail some conduct on the tortfeasor's part other than simply the perjury itself. Even if Celanese offered perjured testimony to injure Alberta Gas, it did nothing else; and all the consequences of what it did resulted from its conduct before the Commission and from the Commission's finding. As in *Levy v. Hayward*, 248 F.2d 152, 153 (D.C.Cir.1957) (per curiam), *cert. denied*, 356 U.S. 941, 78 S.Ct. 783, 2 L.Ed.2d 815 (1958), defendant's alleged fraud in-

**640**

volved no "fraudulent conduct beyond the giving of false testimony." *Cf. Woods Exploration & Producing Co. v. Aluminum Co. of America*, 438 F.2d 1286 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972) (perjury part of broader antitrust conspiracy). In fact, plaintiff was offered the opportunity at oral argument to amend the complaint so as to allege fraudulent conduct other than the perjury, but declined to do so.

Perhaps recognizing that it fails to allege additional fraudulent conduct, plaintiff interprets New York law to permit a suit if the injured party had no effective remedy at the earlier proceeding, because the new claim is broader than or different from the claim in the prior proceeding. But *Newin* stands for no such broad proposition. *Newin* was a fraud action in which plaintiffs were beneficiaries of an excess liability insurance policy and claimed that, by procuring perjured testimony, the primary insurer effectuated a settlement for an amount less than the primary coverage. Apparently, no fraudulent conduct was alleged in addition to the conduct that had occurred at the earlier action.[1] But the plaintiffs in the succeeding action—unlike the plaintiff here—were not parties to the original action in which the perjury took place and therefore "had no effective remedy in the prior action." 37 N.Y.2d at 218, 371 N.Y.S.2d at 891, 333 N.E.2d at 167. Plaintiffs in *Newin* had in fact objected at the earlier proceeding to the bankruptcy referee's approval of the settlement allegedly procured by fraud, but the referee "refused to make any finding on the validity of the plaintiffs' fraud charges." 37 N.Y.2d at 215, 371 N.Y.S.2d at 887, 333 N.E.2d at 165. *Newin* would therefore appear to preclude a collateral attack on the bankruptcy referee's findings by any party who had the opportunity to claim fraud at those proceedings and did not do so, or in cases in which the issue of

fraud was resolved as a result of a party's claim.

█ If *Newin* could be read as expansively as plaintiff claims, then it could not be followed in the federal courts, and its application in the state courts might well be preempted in cases that are essentially collateral attacks on determinations made by federal agencies or courts under grants of specific and exclusive jurisdiction. The scope and effect of a federal decree is governed by federal law. *See Nichols v. Alker*, 231 F.2d 68, 75 (2d Cir.), *cert. denied*, 352 U.S. 829, 77 S.Ct. 42, 1 L.Ed.2d 51 (1956).[2] The sole issue that would be placed before the state courts under plaintiff's complaint, or before this Court in diversity, is whether the Commission's determination was properly reached. The effect of plaintiff's succeeding in its claim for damages would be to shift from Alberta Gas to Celanese the cost of the dumping duties imposed by the Commission upon Alberta Gas. This would undermine the purpose of the Commission's order, designed as it was to prevent Alberta Gas from harming the American methanol industry, including Celanese. Alberta Gas would not be deterred by the duties, as the Commission intended; and Celanese would not be protected. As for plaintiff's other claims for equitable relief, their obvious purpose is to obtain decrees or orders that would further nullify the Commission's determination.

█ Even if plaintiff's complaint stated a cause of action, this Court's jurisdiction over this dispute seems dubious. Congress has created a detailed and comprehensive administrative scheme by which to regulate "dumping" of foreign products in this nation, and it has granted to the Customs Court "exclusive jurisdiction" over actions challenging orders or findings made in the administrative process. *See generally SCM Corp. v. United States*, 450 F.Supp. 1178

---

1. *But see* 37 N.Y.2d at 218 n.*, 371 N.Y.S.2d at 890 n.*, 333 N.E.2d at 167 n.* (plaintiffs allege conspiracy "to create such a hiatus between settlement and coverage . . . as to frustrate payment").

2. In *Nichols*, Judge Frank clearly stated the rule that a subsequent damage action based on perjury is only permitted when the perjury is "but an incident" to a larger fraudulent scheme. 231 F.2d at 80–81 (concurring opinion).

(Cust.Ct.1978); 28 U.S.C. § 1582(a).[3] The proper statutory procedure for challenging the Treasury's Finding of Dumping is to protest the payment of any dumping duty imposed and to commence an action in Customs Court if the protest is denied. Alberta Gas filed such a protest on August 20, 1979, raising in general terms the contention that the Commission's finding of possible future injury was invalid and void, but failing to assert in any detail the claim that the Commission relied on false testimony. *Alberta Gas Chemicals, Inc. v. United States,* 483 F.Supp. 303 (Cust.Ct.), reprinted in Defendant's Memorandum of Law, App.D.

Plaintiff replies that this case arises under the law of fraud and unfair competition and seeks remedies (damages) unavailable under the Anti–Dumping Act. This argument is disingenuous. Plaintiff seeks more than just damages in this case. It seeks equitable relief, presumably including at least a declaration that the Commission was misled by false testimony and would have reached a different result but for that testimony. Moreover, the claim for damages might be mooted if the Commission's determination were changed, since plaintiff's damages apparently all result from the Commission's decision. In any event, even if this case could be distinguished on the basis of the relief claimed, a state would lack power to create a cause of action based solely upon the allegedly erroneous action of a federal agency—especially if that agency's action was not yet final. Any challenge to the Commission's findings must, by statute, be brought in the Customs Court.

Finally, even if plaintiff stated a cause of action and this Court had jurisdiction over it, the doctrine of primary jurisdiction would constrain us from hearing the case at this time. The central issue in this case is whether, but for Celanese's alleged misrepresentations, the Commission would have refused to impose dumping duties upon Alberta Gas. Rather than second-guessing the Commission, we would stay action pending the Commission's redetermination of its decision. A finding by the Commission that its order was appropriate despite the purported misrepresentations would preclude plaintiff from establishing the requisite causation. *See generally Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1975); *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 767–68, 67 S.Ct. 1493, 1500, 91 L.Ed. 1796 (1947). The claim that, by placing perjured testimony before the Commission, Celanese caused it to reach an erroneous result belongs in the federal administrative process, although the Department of Justice is also empowered to act if it is satisfied that perjury occurred in a federal proceeding. *See* 18 U.S.C. §§ 1001, 1621.

The complaint is therefore dismissed for failure to state a claim on which relief may be granted. Fed.R.Civ.P. 12(b)(6).

SO ORDERED.

---

**3.** An earlier effort by plaintiff to circumvent established statutory procedures was rejected by the Customs Court. *Alberta Gas Chemicals, Inc. v. Blumenthal,* 467 F.Supp. 1245 (Cust.Ct. 1979).