(November 15, 1988)

■ MARIO TOLISANO, as Administrator of the Estate of SAMUEL TOLISANO, Deceased, Respondent, v MEYER TEXON, Appellant.—Order of the Supreme Court, Bronx County (Harold J. Tompkins, J.), entered on or about January 29, 1987, which denied defendant Texon's motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) and 3212, is affirmed, without costs.

In January 1979, Theckla Tolisano, as administratrix of the estate of Samuel Tolisano* commenced this wrongful death action against Dr. Texon. The complaint alleges that defendant, with full knowledge that his opinion would be relied upon to determine whether Tolisano's medical condition could withstand the stress of his testifying in a Grand Jury inquiry, rendered false, negligent, reckless and careless opinions regarding decedent's medical condition and ability to appear before a Grand Jury. At the request of the office of the District Attorney, New York County, Dr. Texon had examined Tolisano on March 27, 1978, and opined that Tolisano, who was suffering from advanced coronary atherosclerosis, could nevertheless "testify as a witness to a Grand Jury without significant risk or hazard to his health or life." Consequently, on April 10, 1978, the District Attorney served Tolisano with a

* Mrs. Tolisano has since died and been substituted by decedent's son, Mario Tolisano.

subpoena. Tolisano's petition to quash the subpoena was denied after a hearing held on April 18, 1978. The hearing court, concurring in Dr. Texon's opinion that Tolisano could testify before the Grand Jury without a significant risk to his health or life, ordered that Tolisano appear before the Grand Jury on April 19, 1978. That order was stayed upon Tolisano's immediate appeal to this court. Seven weeks later, on June 6, 1978, while the appeal was still pending, and allegedly as a result of the stress of the aforementioned events, Tolisano died. This court dismissed his appeal. Less than a year later this wrongful death action was commenced, for which plaintiff estate seeks special damages of $1 million.

In 1981, defendant moved unsuccessfully to dismiss this action on the ground that his role as a consultant to the District Attorney's office cloaked him with quasi-judicial immunity. We affirmed the denial of this motion. *(Tolisano v Texon,* 93 AD2d 1008.)

Five years later, in August 1986, defendant moved to dismiss the complaint for failure to state a valid cause of action in malpractice, since there was no doctor-patient relationship, and on the ground that public policy should preclude civil suits for damages against an adverse witness in a prior proceeding. Plaintiff objected to the fact that defendant was making multiple and fragmented summary judgment motions and pointed out that this was not an action for medical malpractice. The court denied defendant's motion to dismiss, concluding that his present arguments were embraced within, or should have been raised in his prior motion to dismiss and that the denial of the prior motion was now law of the case. The court also found that triable issues of fact existed as to the nature and extent of defendant's duty to decedent.

We agree with the I.A.S. court's invocation of the rule against multiple summary judgment motions in the same action in the absence of newly discovered evidence or other good cause. *(See, La Freniere v Capital Dist. Transp. Auth.,* 105 AD2d 517, 518.)* The issues defendant now raises arise from the face of the pleadings and could have been argued at the time of the prior motion to dismiss. Secondly, the I.A.S. court was correct in determining that issues of fact existed as to the nature and extent of defendant's duty to decedent, which duty, plaintiff argues, arose when Dr. Texon agreed to render an opinion, knowing that it would be relied upon in determining whether to serve a subpoena on Tolisano, and which duty may exist outside the realm of medical malprac-

tice. (See, Penn-Ohio Steel Corp. v Allis-Chalmers Mfg. Co., 7 AD2d 441, 444.) Concur—Carro, Kassal and Ellerin, JJ.

Murphy, P. J., and Smith, J., dissent in a memorandum by Smith, J., as follows: The issue here is whether or not a physician who gives his opinion that a person may testify before a Grand Jury without harm to his health may be forced to respond in damages where the person dies without ever appearing before the Grand Jury and while a court order directing him to testify is being appealed.

Samuel Tolisano (hereinafter Tolisano) was a law secretary to various Justices of the Supreme Court in New York County between 1963 and June 6, 1978, when he died at age 62. Throughout this period Tolisano suffered from a heart condition, having experienced a myocardial infarction in 1961. He was hospitalized several times during the next 12 years. On November 17, 1977, Tolisano was subpoenaed by the office of the District Attorney of New York County to testify as a witness before the Grand Jury. He was informed that he was not a target of the investigation but merely a witness. In response, Tolisano advised the District Attorney's office of his cardiovascular condition, which he believed would pose a risk to his health if ordered to testify. The subpoena was withdrawn until March 1978 when Tolisano, represented by counsel, agreed to the request of the District Attorney that he submit to a physical examination by a physician to be chosen by that office. On March 27, 1978, at the request of the District Attorney's office, Dr. Meyer Texon, a specialist in cardiovascular disease, conducted an examination of Tolisano. Following an examination and review of Tolisano's hospital records, and treating and examining physician reports, Dr. Texon in a written report expressed his opinion that Tolisano was able to testify "without significant risk to his life." The District Attorney agreed to pay a fee of $350 for Dr. Texon's services.

Thereafter, Tolisano brought a motion to quash the subpoena. Hearings were held before Justice Harold J. Rothwax, Supreme Court, New York County, on April 18, 1978. Defendant testified as to his opinion at the hearing. Counsel for Tolisano cross-examined Dr. Texon and presented, by means of affidavits, the contrary opinions of two other medical experts. At the conclusion of the hearing, Justice Rothwax found, "based on all of the evidence, that this witness can testify before the Grand Jury without significant risk or hazard to his health or life" and ordered that Tolisano appear before the Grand Jury the following day. However, the order was stayed

upon Tolisano's immediate appeal to this court. Seven weeks later, while the appeal was still pending, Tolisano died. This court dismissed the appeal as moot.

In June 1979 Tolisano's wife, as administratrix, commenced this wrongful death action against Dr. Texon, alleging that he rendered a false, negligent, reckless and careless examination, report and opinion regarding Tolisano's medical condition as a result of which Tolisano was ordered to appear before a Grand Jury and that stress caused by the resulting court order and ensuing appeal led to his death.

In November 1981, defendant moved to dismiss the action claiming quasi-judicial immunity. Special Term denied the motion on the grounds that the defendant had been hired by the prosecutor and not by the court (Fusco, J., Sup Ct, Bronx County). We affirmed, without opinion. *(Tolisano v Texon,* 93 AD2d 1008.)

In August 1986, the defendant, not having been deposed, again moved to dismiss the complaint pursuant to CPLR 3211 (a) (7) and for summary judgment pursuant to CPLR 3212 on the grounds of absence of the purportedly required doctor-patient relationship necessary to support a malpractice action, and that public policy precludes suits against a witness for adverse testimony. Plaintiff opposed the motion, claiming that defendant's second motion for summary judgment was improper, that as reflected by the complaint's ad damnum clause seeking $1 million in damages (the practice of stating the amount of damages sought is barred by CPLR 3017 [c] in malpractice actions), the action is based in negligence not in malpractice, and that there were issues of fact as to whether defendant owed the decedent a duty of reasonable care in examining him. The motion was denied by order entered January 29, 1987 (Harold J. Tompkins, J., Sup Ct, Bronx County), the court ruling that the prior court order denying summary judgment was the law of the case. This appeal followed.

While multiple summary judgment motions in the same action should be discouraged in the absence of newly discovered evidence or other sufficient cause *(La Freniere v Capital Dist. Transp. Auth.,* 105 AD2d 517, 518 [3d Dept 1984]), the issue is meritorious and the delay in raising it has not prejudiced plaintiff. Defendant has not obtained a stay as a result of his two motions for summary judgment and plaintiff has apparently been less than diligent in prosecuting this nine-year-old case. Therefore, the IAS court should have ad-

dressed the motion on its merits. *(Kule Resources v Reliance Group,* 49 NY2d 587, 591 [1980].)

With respect to the merits, the pivotal issue raised on this appeal is whether the adverse opinion testimony of a non-treating physician in a judicial proceeding, and the examination and report which formed the bases for such opinion, may be the sole basis for subsequent action against the physician for damages.

Our courts have traditionally held that an absolute privilege attaches to testimony in judicial proceedings so as to bar later civil actions predicated on the content of that testimony. *(See, Park Knoll Assocs. v Schmidt,* 59 NY2d 205, 209 [1983] [defamation]; *Toker v Pollak,* 44 NY2d 211, 218-220 [1978] [defamation]; *Newin Corp. v Hartford Acc. & Indem. Co.,* 37 NY2d 211, 217 [1975] [fraud]; *see also,* Prosser and Keeton, Torts § 114 [5th ed]; Restatement [Second] of Torts §§ 587, 588.) This privilege is necessary in order to encourage the cooperation of witnesses, particularly expert witnesses. Public policy requires that a witness's testimony be privileged in order that those called upon to discharge their public duty freely do so with knowledge that they will be insulated from the harassment and financial hazard of subsequent litigation. *(Toker v Pollak, supra,* at 219; *Park Knoll Assocs. v Schmidt, supra,* at 209.) Moreover, "testimony on factual issues occurs with such frequency in litigation that to permit a judgment or a settlement made subsequent to the giving of such testimony to be challenged because it was allegedly tainted * * * 'would be productive of endless litigation' ". *(Newin Corp. v Hartford Acc. & Indem. Co., supra,* at 217, quoting *Smith v Lewis,* 3 Johns 157, 168.) Any risk of injury from defamatory, perjured or incompetent testimony is diminished as a consequence of the adversarial nature of judicial proceedings. The erroneous character of an adverse witness's testimony can be demonstrated through skillful cross-examination, and by presentation of a party's own expert witnesses.

Exceptions to this rule have been made in rare cases where, for example, perjury in the prior proceeding was the means to accomplishing a larger fraudulent scheme. *(Newin Corp. v Hartford Acc. & Indem. Co., supra.)* Similarly, if a party has manipulated the legal process or initiated litigation in order to defame or injure another, the privilege has not been applied. *(See, Savage Is Loose Co. v United Artist Theatre Circuit,* 413 F Supp 555, 561 [SD NY 1976].) Under the standards applicable to defamation and injurious falsehood actions, words spoken during the course of judicial proceedings and

thus ordinarily privileged may be actionable if the subject falsehood is so obviously irrelevant as to warrant an inference of express malice. *(Youmans v Smith,* 153 NY 214, 219-220 [1897].)

No such exception is warranted by the instant complaint, which alleges that appellant rendered false, negligent and reckless examination, report and testimony as to Tolisano's condition which testimony was relied upon by the IAS court in issuing its order. Plaintiff makes no claim of physical injury to the decedent during the course of defendant's examination of him. *(Twitchell v MacKay,* 78 AD2d 125 [4th Dept 1980].) Rather, the theory of the case rests squarely on the privileged expert testimony of appellant and on the examination and report which formed the basis of this testimony. Moreover, at the hearing before Justice Rothwax, Dr. Texon was subject to rigorous cross-examination by counsel for Mr. Tolisano in an attempt to disclose any inadequacies in his examination and conclusion, and evidence of contrary expert opinions was introduced.

Contrary to the inference created in the majority opinion, this case is not appropriate for the extension of the tort doctrine of injurious falsehood. This tort is essentially a form of interference with commercial or business relations. (Prosser and Keeton, Torts § 128, at 962 [5th ed]; 2 NY PJI2d 197-198 [Supp].) The origins of injurious falsehood "involved oral aspersions upon the plaintiff's ownership of land, by which he was prevented from leasing or selling it; and from this the tort acquired the name of 'slander of title.' " (Prosser and Keeton, Torts § 128, at 962 [5th ed].) While, by analogy, the tort has been extended to include interference with other property as well as nonproperty interests, the "commercial or economic interest" aspect of the tort has generally remained. *(See,* 2 NY PJI2d 197-198 [Supp]; Prosser and Keeton, Torts § 128, at 962 [5th ed]; *Cunningham v Hagedorn,* 72 AD2d 702, 704 [1st Dept 1979].)

The essential elements of "injurious falsehood" are falsity, malice or reckless disregard, and special damages. (Restatement [Second] of Torts §§ 623A, 633; 2 NY PJI2d 199 [Supp].) As we stated in *Penn-Ohio Steel Corp. v Allis-Chalmers Mfg. Co.* (7 AD2d 441, 444 [1st Dept 1959]) "[t]he utterance or furnishing of false and misleading information may be actionable if done maliciously or with the intention to harm another, or so recklessly and without regard to its consequences, that a reasonably prudent person should anticipate that damage to another will naturally follow."

An essential element of the tort is that the statement be false. When, as with the matter before us, the opinion of a medical expert is at issue, a plaintiff is "hard pressed" to claim the necessary element of falsity. An "opinion" constitutes the expression of a belief or judgment not based upon absolute certainty or positive knowledge but upon what seems valid or probable to one's own mind. (See, Webster's New World Dictionary 977 [2d college ed].) Logic, therefore, will not support a cause of action for injurious falsehood solely upon the opinion of a witness, in the absence of any showing of fabrication or motive to lie.

The wholesale application of the injurious falsehood cause of action to expressed judgments of experts will have a decidedly chilling effect upon the willingness of professionals to offer opinions when invocation of privilege is unavailable.

While recognizing that the tort of injurious falsehood has been applied in several instances to statements of medical professionals (see, Kleber v Stevens, 39 Misc 2d 712 [Sup Ct, Nassau County 1963], affd 20 AD2d 896 [1964]; Jenkins v Wilbur, 72 AD2d 822 [3d Dept 1979]; Felis v Greenberg, 51 Misc 2d 441 [Sup Ct, Kings County 1966]), there is no reason to expand the application of this predominantly commercial tort to the facts in this case.