[715 NYS2d 232]

New York City Transit Authority, Respondent-Appellant, v Morris J. Eisen, P. C., et al., Appellants-Respondents, et al., Defendants.

First Department, October 31, 2000

## APPEARANCES OF COUNSEL

*Steve S. Efron* of counsel (*Renee L. Cyr* on the brief; *Wallace D. Gossett,* attorney), for respondent-appellant.

*Thomas R. Newman* of counsel (*Luce, Forward, Hamilton & Scripps, L. L. P.,* attorneys), for Morris J. Eisen, P. C. and another, appellants-respondents.

## OPINION OF THE COURT

MAZZARELLI, J.

The New York City Transit Authority (NYCTA) brought this action to recover monies paid in two personal injury actions where it was the defendant. In both of those actions, the plaintiffs were represented by Morris J. Eisen, P. C. (the Eisen firm). The NYCTA alleges that the payments, one a settlement and the other a satisfaction of a jury verdict, were procured by fraud. The two personal injury actions, *Robbins v New York City Tr. Auth.* (105 AD2d 616 [*Robbins*]) and *Nieves v New York City Tr. Auth.* (113 AD2d 1034 [*Nieves*]), were among a number which were the basis of a Federal criminal indictment against seven individuals associated with the Eisen firm.[1]

The defendants here are: the Eisen firm; Morris Eisen, the founder and sole shareholder of the Eisen firm; Harold Fishman and Joseph Napoli,[2] both trial attorneys associated with the firm; Alan Weinstein and Marty Gabe, private investigators regularly retained by the Eisen firm; Jose Nieves, Anna Nieves and Willa Robbins, the plaintiffs in the personal injury suits; and John Visiglia and Ronnie Baerga, witnesses in those suits who testified falsely. In its complaint, NYCTA also named

1. The defendants in this case who were also named in the Federal indictment are Morris Eisen, Joseph Napoli, Harold Fishman, Alan Weinstein, and Marty Gabe.

2. Although Napoli was named as a defendant in the summary judgment motion, the claims against him have been held in abeyance pending an ongoing Bankruptcy Court proceeding.

Executive Life Insurance Company as a defendant because it issued the annuity for the structured settlement in the *Robbins* case.[3]

In the Federal proceeding, Morris Eisen, Joseph Napoli, Harold Fishman, Alan Weinstein, and Marty Gabe were indicted for a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ([RICO] 18 USC § 1962 [c], [d]; *United States v Eisen*, 1990 US Dist LEXIS 14219, 1990 WL 164681, *affd* 974 F2d 246, *cert denied sub nom. Gabe v United States*, 507 US 998, *cert denied* 507 US 1029). After a four-month jury trial, each of the Federal criminal defendants was convicted of both conducting and conspiring to conduct the affairs of the Eisen firm through a pattern of racketeering activity. In the indictment, the Eisen firm was alleged to be the enterprise through which the racketeering was conducted, and the underlying acts supporting the charges included that Eisen, Napoli, Fishman, Weinstein, Gabe, and two other individuals associated with the Eisen firm engaged in 26 "predicate" acts. These included arranging and paying for false testimony, introducing fake witnesses, fabricating evidence, paying unfavorable witnesses not to testify, and creating false photographs, documents and physical evidence for use before and during trial, which, in fact, yielded millions of dollars in contingency fees to the Eisen firm to secure lucrative jury awards in 23 personal injury actions and one legal malpractice action. Among those cases were the two personal injury actions at issue here (*Robbins* and *Nieves*).

The complaint in this action seeks (1) compensatory and punitive damages against the Eisen firm, Eisen, Fishman, Napoli, Gabe and Weinstein for a civil conspiracy to commit a fraud against NYCTA; (2) treble damages against the Eisen firm, Eisen, Fishman, and Napoli for their violation of Judiciary Law § 487; (3) rescission and restitution of the amount paid in the *Robbins* settlement from the Eisen firm, Eisen, Napoli, Gabe, Hollingshead, Robbins and Executive Life; (4) damages for unjust enrichment in the amount of the jury award in *Nieves* against the Eisen firm, Fishman, Weinstein, Gabe, Visiglia, Ronnie Baerga, Anna Nieves and Jose Nieves; and (5) damages in the amount of the judgment and the settlement in the two actions against the Eisen firm and Morris J. Eisen for reckless and negligent hiring.

---

3. A prior motion court granted Executive Life's motion to sever the action against it. This determination is not at issue on appeal.

The facts of *Robbins* are as follows. At about 6:00 A.M. on October 7, 1977, plaintiff Willa Robbins was on her way to work on a NYCTA bus, heading east on the Hempstead Turnpike. The bus went past the designated stop and halted 200 feet away, near a ramp onto the Cross-Island Parkway. Ms. Robbins and Wayne Hollingshead, a co-worker, got off the bus. It was still dark outside, and as Ms. Robbins crossed the turnpike, she was struck by a hit-and-run driver. As a result, she suffered severe injuries, including loss of memory. At trial, Mr. Hollingshead testified that the bus driver had specifically signaled to both of them with a wave of his arm that it was safe to cross the road. Ms. Robbins did not remember the accident and did not testify. The jury returned a verdict of $2.2 million against NYCTA. This Court set the verdict aside based upon evidentiary errors, and remanded for retrial (*Robbins v New York City Tr. Auth.*, 105 AD2d 616, *supra*). The parties, Napoli representing Ms. Robbins, agreed to settle the case for $1 million. Mr. Eisen appeared in court to execute the stipulation of settlement. NYCTA paid $509,332.60 to Ms. Robbins and $490,167.40 to Ms. Robbins and Morris J. Eisen.

At the subsequent RICO trial, Steven DiJoseph, an attorney from the Eisen firm, testified that Napoli, having researched the relevant case law, falsified the facts of the case, concocting the story that the bus driver signaled that it was safe to cross the highway in order to assure liability against NYCTA. William J. Stanton, Eisen's former personal assistant, confirmed this account of the facts when he testified that Marty Gabe had pressured Hollingshead to falsely testify about the events preceding the accident, explicitly instructing him to fabricate the testimony that the bus driver waved his hand to indicate that it was safe to cross the road.

The *Nieves* case began when Jose Nieves, who was then nine or ten years old, fell on the subway tracks at the Longwood Avenue Subway Station in the Bronx. A train ran over his arm and severed it. The Eisen firm sued NYCTA on behalf of the child and his mother, Anna Nieves. Harold Fishman, of counsel to the Eisen firm, tried the case. Ronnie Baerga, a friend of Jose Nieves, testified that Jose Nieves was on the train, walking between two cars when the train came to a halt and jolted, and that Jose Nieves fell on to the tracks because a safety chain was missing. Baerga further testified that he and Nieves' other friends frantically shouted to the conductor, asking him not to move the train, but that the train nevertheless proceeded forward. In contrast, NYCTA contended that Nieves was on

the station platform and fell onto the tracks while attempting to board the train by jumping onto the space connecting two subway cars as the train was about to pull out of the station.

In answers to a special verdict, the *Nieves* jury found that while the acts of NYCTA did not cause Nieves to fall onto the tracks, it was negligent in causing the train to move where the motorman knew or should have known that Nieves was on the tracks, and that this negligent act was a proximate cause of Nieves' injury. The jury also found that Jose Nieves was contributorily negligent, but concluded that the defendant was liable under the doctrine of last clear chance,[4] and returned a verdict of $750,000 in favor of Nieves. On appeal, the verdict was affirmed (*Nieves v New York City Tr. Auth.*, 113 AD2d 1034, *supra*). On October 18, 1985, the NYCTA paid $787,089.13 to Nieves and the Eisen firm in satisfaction of the judgment.

At the Federal trial, Stanton testified that a different version of the events leading up to the accident was described to Marty Gabe by John Visiglia, another one of Nieves' friends who had also witnessed the accident. Because Visiglia's account was not favorable to plaintiff, Stanton testified that Gabe gave Visiglia $100 not to be found, and that when Gabe told Fishman that "John would not be a problem," Fishman answered, "Good Work."

The Federal jury found that Fishman, Weinstein and Gabe coached Jose Nieves' friend Ronnie Baerga to give perjured testimony supporting these defendants' invented version of the facts, and that Anna Nieves had also been coached to give perjured character testimony favorable to her son. After the personal injury verdict, Nieves paid Baerga for his testimony with money received from the judgment.

NYCTA moved for summary judgment on liability and damages on its fraud and Judiciary Law § 487 claims, for summary

---

4. Because Nieves' action accrued before September 1975, the verdict was subject to the rules of contributory negligence, which precluded a plaintiff from recovery where a jury found that his or her own actions were also a proximate cause of an accident (*Dominguez v Manhattan & Bronx Surface Tr. Operating Auth.*, 46 NY2d 528). However, a plaintiff could avoid the contributory negligence bar to recovery where a jury found that a defendant had the "last clear chance" to avoid the accident. The elements of the last clear chance theory are: "(1) the plaintiff negligently places himself in a perilous situation from which he cannot then extricate himself in order to avoid the injury; (2) the defendant becomes aware of the danger at a time when he can avert the accident; and (3) the defendant nonetheless fails to use reasonable care so as to prevent the injury" (*Dominguez v Manhattan & Bronx Surface Tr. Operating Auth.*, *supra*, at 533).

judgment on liability only on its unjust enrichment claim, rescission of the *Robbins* settlement and vacatur of the *Nieves* judgment. The motion was based on the argument that the plaintiffs in *Robbins* and *Nieves* were collaterally estopped from contesting the fact that they could not have prevailed in those cases but for the defendants' fraudulent acts. Defendants cross-moved to dismiss the action as untimely or, alternatively, as an improper collateral action seeking damages for perjury in prior litigation.

The motion court found all of NYCTA's claims timely as commenced within six years of the dates they accrued, respectively, when the *Robbins* case was settled and the *Nieves* judgment was affirmed. The IAS Court further found that the Eisen firm was bound by the Federal judgments, and that it and Eisen were liable for the acts of Napoli, Fishman, Weinstein, and Gabe. It concluded that the Eisen-related defendants were collaterally estopped from denying that the prior convictions for mail fraud and bribery necessarily determined that material misrepresentations were knowingly made in both *Robbins* and *Nieves* with intent to induce reliance on them. The motion court also concluded that a triable issue existed as to whether NYCTA had established the reliance and damage elements of its fraud claims, i.e., whether the NYCTA would have prevailed in *Robbins* and *Nieves*, and would have been induced to pay the agreed-upon amount to settle *Robbins* or to satisfy the judgment in *Nieves* but for the false testimony. The motion court similarly found triable issues of fact with respect to the claim for unjust enrichment arising out of the *Nieves* action as against the Eisen firm, Fishman, Weinstein, Gabe, Jose Nieves and Anna Nieves. However, finding that the attorney defendants were collaterally estopped from denying deceit and collusion with the intent to defraud the NYCTA, the IAS Court granted NYCTA partial summary judgment on its Judiciary Law § 487 claim against the attorney defendants in *Robbins* and *Nieves*.

With respect to defendants' contention that this action was an improper collateral attack on the *Robbins* and *Nieves* judgments, the IAS Court disagreed. It found that the acts of perjury "constituted part of a wider scheme to defraud civil defendants" and reap large contingency fees. The motion court further held that Napoli, Gabe and Hollingshead had not been parties to the *Robbins* stipulation and could not be held liable on the rescission cause of action. With respect to the claim for rescission against the Eisen firm, Eisen and Robbins, the IAS

Court found that factual issues precluding summary judgment existed. The court similarly held that factual issues precluding the claim for unjust enrichment with respect to the *Nieves* judgment were present.

On appeal, the Eisen firm and Morris Eisen, with Gabe, Fishman and Weinstein adopting Eisen's arguments,[5] contend that this action is an improper collateral attack on past judgments on the basis of perjury, that the main causes of action are time barred, and that the court improperly granted partial summary judgment on the Judiciary Law § 487 claim. On its cross appeal, NYCTA cites the Federal verdict and argues that, as a matter of law, it was defrauded and is entitled to the amount of the settlement in *Robbins* and the judgment in *Nieves*.

■ The complaint here is timely. Defendants' argument that plaintiff's fraud claims are time barred because the initial verdicts in *Robbins* and *Nieves* were rendered more than six years before the instant complaint was filed is meritless. On a prior appeal in this case, this Court determined that the six-year Statute of Limitations applicable to a common-law fraud claim would govern plaintiff's Judiciary Law § 487[6] claim, and that under the facts of this case, the statutory claim was not time barred (*New York City Tr. Auth. v Morris J. Eisen, P. C.*, 203 AD2d 146).

Plaintiff asserted its common-law fraud claim within the same complaint as the statutory cause of action, and it likewise is timely. An actionable fraud claim requires proof that defendant made a misrepresentation of fact which was false and known to be false. It also requires a showing that the misrepresentation was made with the intent to induce another party's reliance upon it. These elements having been established, the defendant is liable for all harm caused by plaintiff's justifiable reliance upon the misrepresentation (*see, Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403; Restatement [Second] of Torts § 525; 24 NY Jur, Fraud and Deceit, § 14). Because a cause of action for fraud cannot accrue until every element of the claim, including injury, can truthfully be alleged (*Maharam v Maharam*, 235 AD2d 226), the motion court correctly

---

5. Ms. Robbins does not appear on appeal. Jose Nieves, his mother, and the three witnesses who gave false testimony in the two cases (John Visiglia, Ronnie Baerga, and Wayne Hollingshead) are in default.

6. Judiciary Law § 487 provides, as relevant, that an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party * * * forfeits to the party injured treble damages, to be recovered in a civil action."

concluded that the NYCTA's fraud claim accrued no earlier than the settlement of the *Robbins* litigation and the satisfaction of the judgment in *Nieves*, both of which occurred within six years of the filing of the instant complaint.

■ Further, the finding in the Federal criminal case necessarily determined that Eisen, Fishman, Weinstein and Gabe knowingly made material misrepresentations with the intent to induce reliance thereupon by a number of parties in personal injury actions, including NYCTA, and the litigants here concede that Eisen, Fishman, Weinstein and Gabe are collaterally estopped from arguing that these elements of the fraud claims have not been conclusively established. The attorney defendants are similarly estopped from relitigating the deceit and collusion findings of the Federal jury with respect to the collateral Judiciary Law § 487 claims. However, the Federal conviction did not conclusively establish that plaintiff justifiably relied upon defendants' misrepresentations and was thereby damaged, nor did it specifically determine that the attorneys' actions had caused pecuniary harm as required to establish liability under the Judiciary Law (*see, Werner v Katal Country Club*, 234 AD2d 659, 663 [no section 487 liability unless the plaintiff has been caused damage]).

To prove its justified reliance on defendants' misrepresentations in *Robbins*, NYCTA presented the affidavit of Albert Cosenza, Vice-President and General Counsel, wherein he stated that he approved the settlement of *Robbins* solely on the basis of the "wave" theory, and that he gave no consideration to other theories of liability such as the unauthorized bus stop theory. The affidavit also noted that Hollingshead would be available to give the identical unrebutted testimony about the wave theory at a retrial,[7] Because reliance is determined in the circumstances of a settled case by examining only the factors which were considered in determining to settle,[8] we find this affidavit sufficient to establish justifiable reliance and direct rescission of the settlement.

Defendants argue that issues of fact preclude resolution of the reliance issue at this stage because the terms of settlement

---

**7.** The *Robbins* settlement was reached approximately four years before the Federal indictment was issued. At this point, NYCTA was not aware Hollingshead's testimony was perjurious.

**8.** Analysis of the probability, under the facts of the *Robbins* accident as they truly existed, that the NYCTA would most likely have been held liable is irrelevant to the issue of reliance with respect to the settlement agreement.

were also reached, at least in part, upon an evaluation of the severity of plaintiff's injuries. However, the prospect of a large damage award was only a threat to NYCTA upon a finding of liability. Given NYCTA's justified belief that the perjured testimony exposed it to liability, potentially equaling or exceeding the original $2.2 million verdict, it is entitled to restitution of the full $1 million paid pursuant to the fraudulently procured settlement agreement. NYCTA is also entitled to summary judgment against the attorney defendants on its Judiciary Law § 487 claim with respect to the *Robbins* litigation (*see, Werner v Katal Country Club, supra; cf., Mills v Pappas,* 174 AD2d 780, *lv denied* 78 NY2d 1121; *Brown v Samalin & Bock,* 155 AD2d 407).

In *Nieves,* clearly NYCTA relied upon the fraud when it satisfied the verdict which had been improperly procured. There was no nonperjured testimony or other evidence that a NYCTA employee had any knowledge that Jose Nieves was in danger, or that the motorman was looking back at the time of the accident. Thus, there was no nonfabricated support for the last clear chance theory, the sole presupposition of plaintiff's case, and the articulated basis for the jury's verdict. As there was no authentic factual basis for the jury's finding of liability (*Forde v New York City Tr. Auth.,* 80 AD2d 825; *compare, Dominguez v Manhattan & Bronx Surface Tr. Operating Auth., supra*), summary judgment on behalf of NYCTA on its common-law fraud claim in *Nieves* is appropriate, and the *Nieves* judgment is vacated. Plaintiff is also granted partial summary judgment as to liability on its Judiciary Law § 487 claim. However, as the NYCTA concedes, the factual issue of "whether each defendant was actually personally and individually enriched as a result of the fraudulent schemes, and if so, by how much," precludes summary resolution of the unjust enrichment cause of action.

■ Defendants finally argue that the entire action should be precluded based upon the principle that, generally, a party who allegedly lost or settled a case as a result of false testimony cannot collaterally attack the judgment in a separate action for damages against the party who adduced the false testimony (*Yalkowsky v Shedler,* 94 AD2d 684, *lv dismissed in part and denied in part* 60 NY2d 700; *Empire Mut. Ins. Co. v United Serv. Auto. Assn.,* 50 AD2d 676; *Photo-Marker Corp. v Penn-Keystone Realty Corp.,* 19 AD2d 816; *Anchor Wire Corp. v Borst,* 277 App Div 728; *see also, Alberta Gas Chems. v Celanese Corp.,* 497 F Supp 637 [SD NY], *affd* 697 F2d 287, *cert denied* 459 US

1092 [applying New York law]). While this principle is generally viable, an exception exists where the perjury is a means for the accomplishment of a larger fraudulent scheme. An action for damages is not precluded in that circumstance (*Newin Corp. v Hartford Acc. & Indem. Co.*, 37 NY2d 211; *Burbrooke Mfg. Co. v St. George Textile Corp.*, 283 App Div 640; *Verplanck v Van Buren*, 76 NY 247).

This case fits into this exception as the perjury here was part of a larger fraudulent scheme. The larger scheme, beyond the perjured testimony in *Robbins* and *Nieves*, was the systematic use of the Eisen firm as a vehicle to unjustly pursue personal injury actions through fraudulent use of the mail, bribing witnesses, using phony witnesses, and bribing State court personnel, in order to recoup large damage awards and settlements, from which defendants herein recovered contingency fees (*see, Verplanck v Van Buren, supra*, at 261 [false testimony not the "sole moving factor in the cause of action. The fraudulent purpose or intent, formed before the accounting and trial, the fraudulent concoction of the unreal contracts * * * and the false entries in the books of account, are the chief bases of the cause of action. The acts of the defendants upon the trial are but a part of an entire transaction"]).

In the Federal criminal trial, the jury found Morris Eisen, Joseph Napoli, Harold Fishman, Alan Weinstein, and Marty Gabe guilty of violating the Federal Racketeer Influenced and Corrupt Organizations Act (18 USC § 1962 (c) and (d) not only in *Robbins* and *Nieves*, but also in 10 other personal injury lawsuits. The RICO convictions necessarily required a finding that the defendants were involved in a pattern[9] of racketeering activity, and the court specifically instructed that in order to convict, the jury was required to find "continuity to the acts or a threat that they will continue in the future." In support of the conclusion that the present scheme was not limited to discrete instances of perjury, the Second Circuit noted that perjury was not included among the predicate offenses which can form the basis for a RICO action, and in upholding the conviction it concluded that, "where, as here, a fraudulent scheme falls within the scope of the federal mail fraud statute and the other elements of RICO are established, use of the mail fraud offense as a RICO predicate cannot be suspended simply because *perjury is* **part** of the means for perpetrating

---

**9.** The Federal court charged that "[r]acketeering acts form a pattern if the various acts are related to each other in terms of purposes, results, participants, victims or methods of commission."

the fraud" (974 F2d, at 254 [emphasis supplied]). As discussed above, defendants' fraudulent activities were not confined to instances of perjury; the fraud also encompassed bribing witnesses and presenting phony witnesses. In the Federal case, the fraudulent acts were also shown to include the illegal use of the mails and bribing State court personnel.

Defendants' contention that NYCTA was limited to obtaining relief with respect to the perjured testimony through an appeal of the two suits at issue here is also fallacious, because NYCTA could not have been made whole through an appeal of *Nieves* or a challenge to the settlement agreement in *Robbins*. The witnesses in the personal injury actions were not parties in either of those cases, and Jose Nieves is presently assetless. Also, because of the form of the structured settlement negotiated in *Robbins*, NYCTA could not be adequately compensated for its significant pecuniary losses. Thus NYCTA could not have effectively "vindicated the independent rights pressed here" based upon an appeal or other attack on those judgments (*Newin Corp. v Hartford Acc. & Indem. Co., supra*, at 218).

To consider the effect of perjured testimony in granting plaintiff summary judgment on its fraud and correlative Judiciary Law claims here recognizes the "compelling policy that fraud be frustrated, and consequently that one who defrauds not gain sanctuary merely because a narrow issue, by very reason of his fraud, has been determined in his favor, but by successful concealment of a larger and basically different scheme" (*Burbrooke Mfg. Co. v St. George Textile Corp.*, 283 App Div 640, 644, *supra*).

Accordingly, the order, Supreme Court, New York County (Robert Lippmann, J.), entered on or about July 1, 1999, which, to the extent appealed, denied a defense cross motion for dismissal of the complaint, granted plaintiff partial summary judgment on liability on its cause of action against the attorney defendants under Judiciary Law § 487, and denied plaintiff's motion for partial summary judgment on the remaining causes of action, should be modified, on the law, to grant plaintiff summary judgment against Morris J. Eisen, P. C., Morris J. Eisen, Harold Fishman, Alan Weinstein and Marty Gabe on its fraud causes of action with respect to the *Robbins* settlement and the *Nieves* judgment, the *Nieves* judgment vacated, the matter remanded for further proceedings, and otherwise affirmed, without costs.

WILLIAMS, J. P., TOM, RUBIN and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered on or about July 1, 1999, modified, on the law, to grant plaintiff sum-

mary judgment against Morris J. Eisen, P. C., Morris J. Eisen, Harold Fishman, Alan Weinstein and Marty Gabe on its fraud causes of action with respect to the *Robbins* settlement and the *Nieves* judgment, the *Nieves* judgment vacated, the matter remanded for further proceedings, and otherwise affirmed, without costs.